STATE, Respondent, vs. PABST and others, Appellants.

*April 3—May 22, 1909.*

*Taxation: Inheritance taxes: Constitutional law: Equal protection of laws: Statutes: Construction by courts of state from which adopted: Time of accrual of tax: Appraisement: Rate of taxation: Contingent interests: Defeasible interests: Transfers subject to tax: "In contemplation of death:" Witnesses: Competency: Privileged communications: Information acquired by a physician: Documentary evidence: Public records: Official certificates: Certificate of death: Values: Corporate stock: Appeal and error: Findings, when disturbed: Penalties: "Necessary litigation or other unavoidable delay."*

1. Ch. 44, Laws of 1903, is a proper exercise of the taxing power of the state; taxes levied thereunder are valid and in the nature of excise taxes, imposed on the transfer of property, and not a tax upon property within the meaning of sec. 1, art. VIII, Const.; and the act does not violate the constitutional guaranties of the equal protection and the uniformity in operation of the laws.

2. The provisions of ch. 44, Laws of 1903, are in substance those of the New York transfer tax act, and hence, so far as applicable, the decisions of courts of that state are an aid in construing the Wisconsin statute.

3. The inheritance tax imposed by ch. 44, Laws of 1903, is imposed on the transfer at the time of the death of the transferor and rests as a lien upon the property so transferred until paid.

4. Under the provisions of ch. 44, Laws of 1903, the terms declaring when the tax accrues and when it becomes due and payable are used as equivalents, and prescribe that the tax accrues at the time of the transfer, except as to estates so limited, conditioned, dependent, or determinable upon future contigencies that their value cannot be presently ascertained; that as to those the tax becomes due and payable and accrues at the time of the actual possession and enjoyment.

5. The provisions of ch. 44, Laws of 1903, for discount if tax is paid within one year, and for charging interest and penalties on delayed payments, are not discriminatory and impossible of performance, since ample provision is made for parties to complete an appraisal and have the assessment and determination of the amount of the tax fixed within the time allowed for payment.

6. Ch. 44, Laws of 1903, is not invalid because it imposes a tax on transfers limited to vest on contingencies which may never happen, to persons not in being or ascertainable, or on transfers of defeasible estates which may never go to the persons who are taxed, since the law does not operate to enforce payment of the tax on such transfers until the beneficiary comes into the actual possession and enjoyment thereof.

7. Neither does payment of the tax by the present owners of defeasible estates operate to unjustly tax them, in view of the provisions of subd. 3, sec. 13, ch. 44, Laws of 1903, for reimbursement should it happen that such estates are abridged, defeated, or diminished.

8. Payment of the inheritance tax by the first beneficiary of a defeasible estate is not in the nature of an advancement, since the transfer confers the benefit enjoyed until the happening of the contingency, imposes the tax only on the interest actually received and enjoyed, and when the estate is terminated the tax is then imposed on the person then receiving the property, with provision for a refund of overpayments.

9. Beneficiaries under a will and deed of gift, entitled to take property and income subject to annual payments to testator's widow unless she exercise an option to take a share in lieu thereof, and to similar payments for the support of a child during minority, have a right to the property and income from the donor's death,

and the value of their interests at that time is ascertainable for the purpose of fixing the amount of the inheritance tax; the law providing a means for calculating the value of the interest of the widow and child.

10. The beneficiary of a transfer in trust, on condition that the beneficiary shall receive only the income thereof during life, unless the beneficiary shall have a child which shall attain a certain age, takes an estate dependent upon conditions or contingencies which may extend or change the life estate into a fee, and, under subd. 5, sec. 13, ch. 44, Laws of 1903, the tax should be assessed and collected at the lowest possible rate under the conditions on which it passes at the time of the transfer, subject to reimbursement out of the corpus of the estate transferred in event that no more than a life interest is enjoyed.

11. The words "in contemplation of death" as used in ch. 44, Laws of 1903, refer to an expectation of death which arises from such a bodily or mental condition as prompts disposal of property and bestowal upon those regarded as entitled to the bounty, and includes gifts *inter vivos* as well as *causa mortis*.

12. Ch. 44, Laws of 1903, does not restrict persons in their right to transfer property in all legitimate ways, but taxes all transfers which are accomplished by will, the intestate laws, and transfers made prior to death which can be classed as similar in nature and effect,—which are impressed with the characteristics of a devolution made at the time of the donor's death.

13. A death certificate made by a physician according to the requirements of secs. 1024, 1024a, Stats. (1898), is a public record, and its contents are not privileged.

14. Such certificate is admissible as a public record within the calls of sec. 4160, Stats. (1898), as *prima facie* evidence of the material facts stated therein. *Rohloff v. Aid Asso.* 130 Wis. 61, distinguished.

15. Evidentiary facts, for which see opinion, warrant a finding that a deed of trust executed about six months before the grantor's death was made in contemplation of death.

16. Where the evidence of value of corporate stock is sufficient to sustain the conclusions of the trial court in its appraisement for the purpose of inheritance taxation, such findings must stand.

17. Litigation to determine doubtful and perplexing questions as to liability of transferees for inheritance tax, and delays occasioned thereby, constitute "necessary litigation or other unavoidable delay" within the calls of sec. 6, ch. 44, Laws of 1903, and under such circumstances the penalty of ten per cent. interest for nonpayment should not be imposed.

TIMLIN, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

This appeal·is from the judgment of the circuit court for Milwaukee county in favor of the state and against *Gustav Pabst, Frederick Pabst, Jr., Maria Goodrich,* and *Emma Soehnlein* for $28,353.72 each. The case had been appealed from the county court to the circuit court, and the judgment rendered is for the amount of the inheritance tax found due and unpaid upon the transfer of the estate of Frederick Pabst, deceased, after making allowance for payments already made.

Frederick Pabst resided in Milwaukee and died there testate on January 1, 1904. On July 17, 1903, he executed and delivered a deed of trust and conveyed to the trustees for the purposes set up in the deed 2,840 shares of stock in the Pabst Brewing Company, a corporation organized under the laws of this state. The stock of the Pabst Brewing Company was divided into 10,000 shares of the par value of $1,000 each. The trust deed was as follows:

"I, Frederick Pabst, of Milwaukee, Wisconsin, for and in consideration of love and affection, do hereby give and transfer twenty-eight hundred and forty (2,840) shares of the capital stock of the Pabst Brewing Company, a corporation, as per stock certificate No. 902, this day duly issued to my wife, Maria Pabst, and my sons, *Gustav G. Pabst* and *Frederick Pabst, Jr.,* in trust, subject to the limitations and terms and conditions herein stated:

"*First.* I reserve to myself the dividend which shall be earned and declared on said stock for the year 1903.

"*Second.* I reserve to myself the right to control the vote of said stock on all questions and at all elections which shall occur in said corporation during my lifetime, and hereby direct said trustees, at all such times, to vote said stock in such manner and for such parties or purpose as I shall direct. After my decease, said trustees shall vote the stock held by them under this instrument, as they or a majority of them shall determine.

"*Third.* Said trustees shall collect and receive the dividends paid on said stock from time to time. The dividend for the year 1903 is to be paid to me. All subsequent dividends are to be paid over by said trustees during my life and that of my wife, Maria Pabst, or either of us, one fourth to my son *Gustav G. Pabst,* one fourth to my daughter *Maria Goodrich,* one fourth to my son *Frederick Pabst, Jr.,* and one fourth to my daughter *Emma Soehnlein,* and their respective heirs; provided, however, that in case any of said parties shall die without leaving surviving issue, his or her share of said dividends shall be paid in equal distribution to the other of said parties or their respective heirs.

"*Fourth.* Upon the decease of both myself and my wife, Maria Pabst, the surviving trustees shall transfer one fourth of said stock to *Gustav G. Pabst,* one fourth to *Maria Goodrich,* and one fourth to *Frederick Pabst, Jr.,* or their respective heirs in case of the death of any of said parties. In case my said daughter, *Emma Soehnlein,* shall, at such time, have a child or children living, such child or the oldest of such children being not less than ten years of age, then the remaining one fourth of said stock shall be transferred to said *Emma Soehnlein,* if she be then living, and said trust shall thereupon cease. If at such time said *Emma Soehnlein* shall have no living issue, or her issue shall not have attained the aforesaid age, said trust shall continue as to one fourth of said stock, and the dividends thereof shall be paid to said *Emma Soehnlein* during her life, provided, that if she have a child or children and the same or any of them attain the age of ten years, she being living, said stock shall then be transferred to her and the trust cease. In case of the death of said *Emma Soehnlein* during the continuance of said trust, leaving issue surviving her, such issue shall receive said dividends during life and said stock shall be transferred to such issue upon the arrival of the oldest thereof at the age of twenty-one years. In case of the death of said *Emma Soehnlein* without issue surviving her, or the subsequent decease of all such issue prior to the transfer of said stock, pursuant to the provisions herein contained, the same shall be transferred to my other children herein named, or their respective heirs by representation. The book value of said stock is four million dollars, and this

transfer is intended, subject to the limitations stated, as a gift of one million dollars to each of my said children.

"Done at the city of Milwaukee, this 17th day of July, 1903.                    [Signed]   FRED PABST.

"In the presence of
             "F. C. Winkler.
             "C. W. Henning."

On the day the trust deed was executed the deceased surrendered to the Pabst Brewing Company certificates for 2,840 shares of its stock and caused new certificates for the same number of shares to be issued to the trustees named in the deed.   On the same day he also made and executed his last will and testament, disposing of all the rest of his property. \ The will provided as follows:

"I, Frederick Pabst, of the city of Milwaukee, in the state of Wisconsin, being of sound mind and memory, do hereby revoke all testamentary dispositions heretofore made by me, and declare my last will and testament as follows:

"*First*. I give and bequeath to my beloved wife, Maria Pabst, my homestead, consisting of the premises fronting on Grand avenue, in the city of Milwaukee, and extending to Wells street, house and grounds, outbuildings and stables, with all their contents and all furnishing belonging thereto and in use therewith, both useful and ornamental, to have and to hold during her lifetime, and with power to dispose of any of the personalty without accountability.

"*Second*. I give to my said wife the annual sum of fifty thousand dollars ($50,000), to be paid to her as long as she shall live, in such instalments and at such times as she may desire.

"*Third*. Subject to the above provisions I give, devise, and bequeath all the property which I may have at the time of my decease, or be in any way interested in, to my executors, in trust during the life of my said wife, the trustees out of the income of said property to pay her said sum of fifty thousand dollars ($50,000) per annum; and also out of said income or said property to them conveyed, to pay all proper expenses for the suitable support and education of my granddaughter and adopted daughter, Emma Maria Pabst, com-

monly called Elspeth Pabst, until she shall arrive at the age
of twenty-one years, and to divide the net income of said
property after said payments, annually, or at such times as
may be convenient, in equal shares among my children, *Gus-
tav G. Pabst, Maria Goodrich, Frederick Pabst, Jr.,* and
*Emma Soehnlein,* or their respective issue; in case of the
death of any of them, such issue to take a parent's share by
right of representation.   In case any of my children shall
die without leaving issue, such income shall be divided among
the remaining children or their issue.   After her arrival at
the age of twenty-one years, said Elspeth shall take an equal
share with the other of said children in said distribution of
income, subject to the same conditions above provided.

"*Fourth.* Upon the decease of my said wife the entire es-
tate shall be divided into as many parts as there are children
then living, counting the living descendants of any deceased
child as the representative of its parent in case of the latter's
decease.   Said parts shall be equal, except that there shall be
transferred to one of said parts, designed for the benefit of
my granddaughter, Elspeth, as provided in paragraph sixth
of this instrument, such number of shares of the capital stock
of the Pabst Brewing Company as shall represent a book
value of one million dollars, according to the regularly kept
books of said Pabst Brewing Company, so that said part shall
exceed each of the other parts by the amount of said shares
of stock.   The reason for this discrimination is, that I trans-
fer, by way of gift, a like amount in book value of said stock
for the benefit of each of my children, *Gustav G. Pabst, Ma-
ria Goodrich, Frederick Pabst, Jr.,* and *Emma Soehnlein,*
contemporaneously with the making of this will.   One of
said equal parts shall be paid over and transferred to my son
*Gustav G. Pabst* or his heirs; one to my daughter *Maria
Goodrich* or her heirs; and one to my son *Frederick Pabst,
Jr.,* or his heirs.

"*Fifth.* In case my said daughter, *Emma Soehnlein,* shall,
at the time of the decease of my wife, have a child or children
living, such child or the oldest of such children being not less
than ten years of age, then and in such case said *Emma
Soehnlein* shall be entitled to and receive one of said equal
parts of my estate.   If at the time of the decease of my wife
said *Emma Soehnlein* shall have no living issue, or her issue

shall not have attained the aforesaid age, then said part of
my estate shall continue to be held in trust by my executors
and trustees, said *Emma* receiving the income thereof until a
child of said *Emma*, either living at the time of my wife's
decease or thereafter born to her, shall arrive at the age of
ten years, whereupon, such child being living, said *Emma*
shall become entitled to and receive one part of my estate.
In case said *Emma* shall not have a child of said age at the
time of my wife's death, and no child of hers shall, after that
time, reach said age, then said part of my estate shall con-
tinue to be held in trust by my executors and trustees during
the life of said *Emma*, and the income thereof annually paid
to her, and the body or principal of said part shall, in such
case, upon her decease, go in equal shares to my other children
or their respective issue in the same manner and subject to
the same conditions herein provided in reference to other
parts of my estate.    In case said *Emma* shall die leaving a
child or children before the transfer to her of said part of
my estate pursuant to the provisions hereof, the net income of
said part shall thereafter be paid to such child or children in
such equal shares until the oldest shall attain the age of
twenty-one years, whereupon said part shall be transferred
and paid over to such child or children in equal shares.    In
case all of said children shall die before reaching said age and
without leaving lawful issue, said part of my estate shall be
disposed of in the same manner as if said *Emma* had died
without leaving surviving issue.    If issue of any child sur-
vive, it shall take by representation what its parent would
have taken if living.

"*Sixth*. The remaining part of my estate, being the one
increased by the transfer thereto of shares of stock as herein-
before provided, shall, upon the decease of my wife, continue
to be held in trust by my executors and trustees, provided said
Elspeth be living at that time; and the annual income thereof
shall be paid to said Elspeth during her life.    In case of said
Elspeth's death without leaving issue surviving her, said part
of my estate shall be added in equal shares to the remaining
parts thereof and disposed of as parts thereof as heretofore
directed.    If said Elspeth shall have died prior to the decease
of my wife, leaving a child or children who shall survive my
wife, or if she shall die after my wife's death, leaving a child

·or children, then also said part of my estate shall continue to be held in trust by my executors and trustees, and the annual income thereof shall be paid to such issue in equal shares for the term of twenty-one years after the death of said Elspeth, and shall thereupon be paid to such child or children and the issue of any of them who may have died, according to the rule of representation. In case of the death of said .Elspeth without leaving issue surviving her, or the extinction of her issue prior to the expiration of. twenty-one years from the time of her decease, said part of my estate shall be added in equal shares to the other parts as herein directed and pass to my other said children or their respective issue or heirs, subject to the same conditions and limitations herein prescribed as to said other parts. In case said Elspeth shall attain the age of forty-five years and shall then have living a child or children, the whole of said part of my estate shall pass and be transferred to her.

"*Seventh.* In making distribution both of the income and the principal of my estate as above directed, advancements heretofore made by me to any of my children and charged against them on my private books, shall be taken into account and charged respectively against the share of the child to whom they were made, reducing such share by the amount thereof. This provision, however, shall not apply to certain shares of stock of the Pabst Brewing Company which I have heretofore made over by way of gift to my sons, *Gustav G. Pabst* and *Frederick Pabst, Jr.*

"*Eighth.* I give to my wife, at her option, in lieu of the aforesaid fifty thousand dollars ($50,000) per annum, an equal one-sixth share of my entire estate, such option to be exercised by her in writing within one year from the time of my death. In case she shall so exercise this option, my executors and trustees shall, instead of paying to her said fifty thousand dollars ($50,000) per annum, pay to her the income of such one-sixth of my estate and transfer and make over to her the body or part thereof whenever she may so request. This my will to remain in other respects unaltered, and such portions of such one-sixth share as she may not have requested to be transferred to her to pass as part of my estate as herein provided.

"*Ninth.* I nominate and appoint my beloved wife, Maria

Pabst, and my sons, *Gustav G. Pabst* and *Frederick Pabst, Jr.,* executors of this my will and trustees of the trust thereby created; and I hereby confer upon said executors and trustees full power and authority to manage and control said property according to their judgment and discretion, and to sell and dispose of any portions thereof, including any real estate, also said homestead, during the life of my wife, if she shall desire it and consent thereto. And I give them full authority to invest the trust properties in such manner as they shall deem best, with no responsibility for losses, provided they act honestly and in good faith. In case any of said executors or trustees shall die, the surviving two shall have authority to nominate a successor, who shall be clothed with the same authority as was enjoyed by the deceased executor or trustee; provided, that until the legal appointment of such third executor or trustee, the survivors shall have full power and authority in all respects to act under the provisions of this will. I request that no bonds shall be required from my said executors or trustees. And I direct that no inventory of my estate shall be required to be filed in the county court or any public office; but it shall be the duty of said trustees to keep, for the benefit of all parties interested in my estate, full and accurate books of account of my said estate and all their dealings therewith."

The will was admitted to probate February 3, 1904, and on the same day the appraisers in the probate proceedings were appointed and letters testamentary issued to the executors named in the will. About May 20, 1904, the appraisers were furnished with an inventory of the estate by the executors, and on December 31, 1904, they completed their appraisal and made their report valuing the estate at $2,734,475. The executors, under the advice and as directed by their counsel, computed the inheritance tax upon the transfer of property under the will on this appraisal at $58,714.72, after deducting the five per cent. discount allowed for payment within one year from the testator's death, and on the same day paid this sum to the treasurer of Milwaukee county, upon condition that they would have a right

to demand restitution if the tax should be found invalid.
December 13, 1905, the secretary of state petitioned for a
re-appraisal of the estate, and on the following 27th day of
September a supplemental inventory was filed, whereby
omitted items of the property of the estate, amounting to.
$180,833, as found by the court, were added to the value of
the estate. On October 3, 1906, Maria Pabst, the widow of
the testator, died. Letters of administration upon her es-
tate were issued to the Wisconsin Trust Company of Mil-
waukee, and this company was also named in her stead as one
of the executors of the will and as a trustee under the trust
deed of Frederick Pabst, deceased. The executors in mak-
ing their estimate of the value of the estate for payment of
the inheritance tax omitted some property belonging to the
estate which passed under the will, but this was afterward
added. They listed the stock of the brewing company which
belonged to the estate at its par value and took no account of
the stock transferred by the deed of trust.

The county court valued the stock in the brewing com-
pany at $1,408.45 per share. This was somewhat less than
the value as carried on the books of the company, but was the
value derived from the statement in the trust deed that the
value of the shares of stock so placed in trust was $4,000,000.
It appeared from the evidence in the circuit court that the
stock in the brewing company was not for sale in the market
generally, and that it was held very largely by members of
the family. There was evidence of the amount paid per
share in five transfers of stock during the six years before the
death of the testator and of the amounts paid per share in
five transfers thereafter. The prices at which these transfers
were made varied from $1,050 per share to $1,500 per
share. Evidence showed that the book value of the corpora-
tion increased from $11,262,731.51 on January 1, 1896, to
$14,810,728.60 on January 1, 1904, the date of Frederick
Pabst's death, and that it was $15,347,643.46 on January 1,

1905, and $15,753,286.36 on January 1, 1906, the two years succeeding his death. The dividends declared and paid upon the stock from 1896 to 1904 averaged three and two-ninths per cent., and the net earnings, according to the books, were as follows: 1897, $852,087; 1898, $653,891; 1899, $829,300; 1900, $801,165; 1901, $706,565; 1902, $718,042; 1903, $804,170; 1904, $829,903; 1905, $845,841. It appeared that the good will of the corporation was not carried upon the books as an asset, and that the various purchases of real estate were carried as assets at the cost price. Experts on the market value of stocks, called by the defense, variously estimated the stock as having a market value of from eighty per cent. of its face value to par value. / As bearing on the question of whether or not the trust deed had been executed in contemplation of death, there was evidence that the deceased had suffered from diabetes for fifteen years, that he had watched the progress of the disease during that whole period, and that frequent urinalyses kept him informed of his physical condition and the state of the malady. He was frequently examined by physicians and had them in almost constant attendance and on their advice dieted and went to various health resorts in Europe and this country seeking relief. In the early part of the year 1903, in the hope of restoring his impaired health or at least of checking the decline of his strength, he went to the milder climate of southern California. While there he was very seriously ill and his son was sent for. Early in the summer he came home to Milwaukee accompanied by this son and his wife. After his return his declining vitality necessitated that his physicians frequently consult together on his case. On July 17, 1903, while in this physical condition, he executed the deed of trust and his will. Later in the year his condition became so serious that the leading specialist in the country on the disease from which he suffered was called by his family. Generally speaking, he was of a cheerful, optimistic

disposition, loving to his family and friends, and, although probably better informed concerning his serious condition than any but a professional man or specialist, was cheerful and encouraging, although he told some of his attendants that he required their assistance to prolong his life. For some time his sons had had the active management of his business. with his constant advice and participation with a view to acquaint them with the business and to prepare them to manage the large interests of the family without his assistance.

The court found that the testator died January 1, 1904; that he left surviving him certain heirs, the facts as to the probate of the will, the death of the widow, and the substitution of the Wisconsin Trust Company as executor in her place; that the deceased had been afflicted for about fifteen years with diabetes; that he knew during the last year of his. life that he could not recover from the diabetes and the intercurrent diseases from which he suffered; that he therefore executed the trust deed in contemplation of death; that it was intended to take full effect only upon his death; and that the deceased reserved to himself for a period the dividends of the stock thus conveyed by him and retained the right to vote and control the stock during his lifetime. An inventory of the estate as disposed of by the trust deed and by the will is among the findings, and the amount of the debts, funeral expenses, and expenses of administration to be deducted from the value of the estate before computing the inheritance tax is found to be $212,247.55.

As conclusions of law the court found that the property transferred by the deed of trust was so transferred in contemplation of death and was intended to take effect at the time of death of the donor; that the tax upon the property transferred by the deed and by the will accrued January 1, 1904, the time of the death of the donor; that there should be imposed a penalty of ten per cent. per annum of the amount of the tax due and unpaid, computed from the date of the death of the·

·deceased to the time of appeal from the judgment of the county court; that interest at the rate of six per cent. should be allowed upon the amount due for taxes after the date of the appeal; that the county court of Milwaukee county was the proper tribunal to fix and determine and to apportion the amount of the inheritance tax to be paid by the estate or the beneficiaries of the trust deed and the will; and that there was due as such tax from *Gustav Pabst, Frederick Pabst, Jr., Maria Goodrich,* and *Emma Soehnlein,* each, the sum of ·$28,328.72. ·

This is an appeal from the judgment entered on the findings.

*Geo. D. Van Dyke,* of counsel, for the appellants, contended, *inter alia,* that the act in question imposes a tax not on the property but on the transfer of the property, or, in other words, a tax is imposed on the transfer or right to receive each separate estate transferred to individual legatees ·or donees. *Matter of Westurn,* 152 N. Y. 93, 99; *Matter of Vanderbilt,* 172 N. Y. 69, 73; *Matter of Hoffman,* 143 N. Y. 327, 331, 332; *Matter of Corbett,* 171 N. Y. 516; *Matter of Costello,* 189 N. Y. 288, 292; *Matter of Sloane,* 154 N. Y. 109; McElroy, Transfer Tax, secs. 279, 329, 334, 335, 503; Dos Passos, Inheritance Tax Law, §§ 57, 58; *Matter of Brez,* 172 N. Y. 609; *Matter of Hosack,* 39 Misc. 130, 78 N. Y. Supp. 983; *Miller v. Tracy,* 86 N. Y. Supp. 1024; *In re Le Brun's Estate,* 80 N. Y. Supp. 486. If the Wisconsin act be construed as authorizing the taxing of expectant estates, contingent or defeasible, at the time of the death of the testator, and before the contingent remaindermen are ascertainable, ·and before such estates are vested in possession or enjoyment, and as making the tax, both on the life tenant's interest and ·on the interest of the contingent remaindermen, payable ·forthwith out of the property and imposing the tax as a lien ·on the property, it cannot be supported on the theory of the nature of the tax adopted in the *Nunnemacher Case* (129

Wis. 190), as it would tax an incomplete transfer before it is received and before there are persons *in esse* capable of receiving it and when it might not be received at all.   So construed, in so far as the payment of the tax depleted the property and reduced the life tenant's income, it would amount to taking the life tenant's property without due process, contrary to the state and national constitutions.   So construed, it would require an appraisal of an estate or interest before any transfer—before there were persons *in esse* capable of receiving; and before it could be ascertained when it would be received or whether it would be received at all; and before it could be ascertained what amount of property, if any, would be received at the uncertain future date.   An appraisal under such circumstances would be difficult, if not impossible.   27 Am. & Eng. Ency. of Law (2d ed.) 352, 354; *Matter of Vanderbilt,* 172 N. Y. 69, 75, 76; *Matter of Brez,* 172 N. Y. 609, 612.   The Wisconsin act may be construed as imposing the tax after the amount of the tax has been fixed by an appraisal and as authorizing the postponement of the taxing of estates in expectancy which are contingent or defeasible until the persons entitled thereto can be ascertained and the amount received by such persons definitely determined.   McElroy, Transfer Tax, sec. 716; 27 Am. & Eng. Ency. of Law (2d ed.) 340, 351, 352, 355; *Herold v. Blair,* 158 Fed. 804, 806; *People v. Koenig,* 37 Colo. 283, 85 Pac. 1129; *English's Estate v. Crenshaw* (Tenn.) 110 S. W. 210; *Lynch v. Union T. Co.* 164 Fed. 161, 165; *Matter of Gordon,* 186 N. Y. 471, 483; *McKenney v. Minahan,* 119 Wis. 651; *Matter of Gihon,* 169 N. Y. 443; *Matter of Westurn,* 152 N. Y. 93; *Matter of Zefita,* 167 N. Y. 280, 283; *Matter of Clinch,* 99 App. Div. 298, 180 N. Y. 300; *Welch v. Sackett,* 12 Wis. 243; *Matter of Wolfe,* 89 App. Div. 349, 85 N. Y. Supp. 949; *Matter of Lansing,* 182 N. Y. 238; *In re Estate of Stone,* 132 Iowa, 136, 109 N. W. 455; *In re Haggerty,* 112 N. Y. Supp. 1017; *Matter of Sloane,* 154 N. Y. 109,

115; Cooley, Taxation (3d ed.) 597; Hill, Taxation, 290, 291, §§ 2, 3; *U. S. v. Marion T. Co.* 143 Fed. 301; *Clapp v. Mason,* 94 U. S. 589, 592; *Mason v. Sargent,* 104 U. S. 689, 693; *Land T. & T. Co. v. McCoach,* 129 Fed. 901; *Tilghman v. Erdman,* 131 Fed. 651; *Eidman v. Tilghman,* 136 Fed. 141, 143, aff'd 203 U. S. 580; *Gill v. Austin,* 157 Fed. 234; *People v. McCormick,* 208 Ill. 437, 70 N. E. 350; *Vanderbilt v. Eidman,* 196 U. S. 480; *Shanley v. Herold,* 141 Fed. 423, 146 Fed. 20; *Howe v. Howe,* 179 Mass. 546, 61 N. E. 225; *Stevens v. Bradford,* 185 Mass. 439; *Billings v. People,* 189 Ill. 472; *Harrison v. Johnston,* 109 Tenn. 245, 70 S. W. 414, 416; *Commonwealth's Appeal,* 127 Pa. St. 435, 439, 17 Atl. 1094; *Comm. ex rel. v. Barker,* 211 Pa. St. 610, 615, 61 Atl. 253; *State ex rel. Hale v. Probate Court,* 100 Minn. 192, 110 N. W. 865; *State ex rel. Basting v. Probate Court,* 101 Minn. 485, 112 N. W. 878; *Dunbar v. Dunbar,* 190 U. S. 340, 345, 23 Sup. Ct. 757; *Matter of Lansing,* 182 N. Y. 238; *Matter of Ramsdill,* 190 N. Y. 492, 495; *Kingsbury v. Chapin,* 196 Mass. 533, 82 N. E. 700; *Eury's Ex'rs v. State,* 72 Ohio St. 448, 74 N. E. 650; *Nunnemacher v. State,* 129 Wis. 223; *Matter of Smith,* 40 App. Div. 480, 58 N. Y. Supp. 128; *Matter of Seaman,* 147 N. Y. 69, 74, 75; *In re Naylor's Estate,* 105 N. Y. Supp. 667. No proper appraisal has been made of such interest or estates as were appraisable at the time the court acted in the matter, and the assessment of all future contingent estates which could not practically be appraised at said time should have been deferred until the parties entitled thereto came into the actual possession or enjoyment thereof on the happening of the contingencies upon which they were limited. *Ayers v. Chicago T. & T. Co.* 187 Ill. 42, 58 N. E. 318; *Matter of Davis,* 149 N. Y. 539; *Matter of Vanderbilt,* 172 N. Y. 69; *Matter of Brez,* 172 N. Y. 609. The act in question is an unjust and unreasonable exercise of the taxing power and violates the guaranties of the state constitution.

and of the XIVth amendment of the national constitution. (a) It attempts to impose a transfer tax—a tax on the right to receive—when there is no transfer. *People v. Mc-Cormick,* 208 Ill. 437, 70 N. E. 350, 353; *Matter of Vanderbilt,* 172 N. Y. 69, 76. (b) The act attempts to make a forced loan from parties presently entitled to a defeasible estate of the amount of the tax imposed on the transfer of the remainder. (c) It attempts to impose on one person the tax in respect to a transfer to another. 27 Am. & Eng. Ency. of Law (2d ed.) 354; *Fitzgerald v. Rhode Island H. T. Co.* 24 R. I. 59, 52 Atl. 815; *State ex rel. Hale v. Probate Court,* 100 Minn. 192, 110 N. W. 865; *Herold v. Shanley,* 146 Fed. 20, 24; *Rogers-Ruger Co. v. Murray,* 115 Wis. 267, 270; *Hartman v. Greenhow,* 102 U. S. 672; *Knoxville T. Co. v. McMillan,* 111 Tenn. 521, 65 L. R. A. 296; *Boston v. Beal,* 51 Fed. 306; *Matter of Tracy,* 179 N. Y. 501. (d) It attempts to impose a penalty before an opportunity is afforded the taxpayer to pay the tax. *County of Redwood v. Winona & St. P. L. Co.* 40 Minn. 512, 42 N. W. 473; *Gallup v. Schmidt,* 154 Ind. 196, 56 N. E. 443; *State v. Jersey City,* 37 N. J. Law, 39; *Lufkin v. Galveston,* 73 Tex. 340, 11 S. W. 340, 341; *Louisville & N. R. Co. v. Comm.* 94 S. W. 655; *Gager v. Prout,* 48 Ohio St. 89, 26 N. E. 1012; *Victoria L. Co. v. Rives,* 115 La. 996, 40 South. 382; *U. S. T. Co. v. New Mexico,* 183 U. S. 535; *Litchfield v. Webster Co.* 101 U. S. 773; *Lake Shore & M. S. R. Co. v. People,* 46 Mich. 193, 212; 2 Cooley, Taxation (3d ed.) 903; *Matter of Davis,* 149 N. Y. 539, 547; McElroy, Transfer Tax, 192–197. (e) The penalties imposed by the act in question, as construed by the court below, are of such a nature as to intimidate and deter a taxpayer from either contesting the validity of the law or seeking its construction in the courts or resisting an overvaluation of his property by the appraisers or by the court. *Bonnett v. Vallier,* 136 Wis. 193, 116 N. W. 885; *Ex parte Young,* 209 U. S. 123. The

act unreasonably and unjustly discriminates between persons similarly constituted or situated: (a) Discrimination between specific and money legacies. (b) Discrimination between life tenants. *Matter of Sloane,* 154 N. Y. 109. (c) Discrimination in the matter of valuation. *Lynch v. Union T. Co.* 164 Fed. 161, 167; *Shanley v. Herold,* 141 Fed. 423, 429; Judson, Taxation, §§ 292, 463, 470. The act is prohibited by secs. 31, 32, art. IV, Const., for two reasons: (a) It is a special law by reason of the exemptions it contains. *Chicago & N. W. R. Co. v. Forest Co.* 95 Wis. 80; *Milwaukee Co. v. Isenring,* 109 Wis. 9; *Clark v. Janesville,* 10 Wis. 135, 180; Sutherland, Stat. Constr. §§ 116, 120, 127–129; Words & Phrases, 6577–6584; note in 21 Am. St. Rep. 780; 32 Am. L. Reg. 721, 725; *State ex rel. Baltzell v. Stewart,* 74 Wis. 620; *State ex rel. Church Mut. Ins. Co. v. Cheek,* 77 Wis. 284; *State ex rel. Turner v. Bell,* 91 Wis. 271; *Budd v. Hancock,* 66 N. J. Law, 133, 48 Atl. 1023, 1024; *State ex rel. Sanderson v. Mann,* 76 Wis. 469; *Dundee M. T. Inv. Co. v. School Dist.* 19 Fed. 359, 371; *Estate of Cope,* 191 Pa. St. 1, 71 Am. St. Rep. 740; *Black v. State,* 113 Wis. 205; *Nunnemacher v. State,* 129 Wis. 190. (b) If regarded as a general law, it is not uniform in its operation throughout the state, by reason of its exemptions and also by reason of its discriminations above mentioned. *Wis. Cent. R. Co. v. Taylor Co.* 52 Wis. 37; *Chicago & N. W. R. Co. v. State,* 128 Wis. 553; *Magoun v. Ill. T. & S. Bank,* 170 U. S. 283; *Pollock v. Farmers' L. & T. Co.* 157 U. S. 429; *Kelley v. State,* 6 Ohio St. 269; *State ex rel. v. Bargus,* 53 Ohio St. 94, 53 Am. St. Rep. 628; *State ex rel. v. Spellmire,* 67 Ohio St. 77, 65 N. E. 619; *Milwaukee Co. v. Isenring,* 109 Wis. 9, 28.

*T. W. Spence,* of counsel, for the appellants, contended, *inter alia,* that the evidence clearly shows the maximum value of the brewery stock at the time of testator's death to have been par. (a) The statute on this subject is subd. 6, sec. 1,

ch. 44, Laws of 1903, which provides: "Basis of tax: (6) The tax so imposed shall be on the *clear market value* of such property," etc.    (b) In the ascertainment of the meaning of the words "market value" we may safely apply the criterion furnished by the statutes relating generally to the valuation of property for the purpose of taxation; they, being *in pari materia,* should be considered and perhaps be controlling.    Secs. 1052, 1055, Stats. (1898); *Walker v. People,* 192 Ill. 106; *Matter of Smith,* 71 App. Div. 602, 76 N. Y. Supp. 185.    (c) In the absence of other clear and satisfactory evidence the par value of the stock is presumed to be the true value.    *Moffit v. Hereford,* 132 Mo. 513; *Meinell v. Kirkpatrick,* 29 Kan. 679, 685.    (d) The general rule on the construction of the inheritance tax law is applicable in determining the value of the property to be taxed. The rule is this: "Doubt should be resolved in favor of the taxpayer as against the taxing power."    *Matter of Fayerweather,* 143 N. Y. 114; *Matter of Harbeck,* 161 N. Y. 211; *Matter of Enston,* 113 N. Y. 174.    (e) The testimony of experts was competent.    *Murray v. Norwood,* 77 Wis. 405; *Whitney v. Thacher,* 117 Mass. 523; 1 Whart. Ev. § 446; *Am. F. & F. Co. v. Settergren,* 130 Wis. 338, 342; *Erd v. C. & N. W. R. Co.* 41 Wis. 65, 68; *Baxter v. C. & N. W. R. Co.* 104 Wis. 307.    The deed of gift was not made in contemplation of death within the meaning of the inheritance tax law.    Ch. 44, Laws of 1903, not only copies the New York inheritance tax law which was in force in 1899, omitting the unconstitutional feature pointed out in *Black v. State,* 113 Wis. 205, but copies changes therein made subsequently by the legislature of that state.    The rule of adoption by Wisconsin of the construction of the New York courts applies, therefore, to all the decisions of such courts prior to the year 1903. The New York courts repeatedly held, prior to 1899 and prior to 1903 with a single qualification, that the clause of the law making taxable transfers in contemplation of death

referred only to gifts *causa mortis*. *Matter of Seaman,* 147 N. Y. 69; *Becker v. Chester,* 115 Wis. 90, 127; *Matter of Masury,* 28 App. Div. 580, 159 N. Y. 532; *Matter of Edgerton,* 35 App. Div. 125, 158 N. Y. 671; *Matter of Swift,* 137 N. Y. 77; *Matter of Hoffman,* 143 N. Y. 327; *Matter of Spaulding,* 49 App. Div. 541, 158 N. Y. 671; *In re Bostwick,* 160 N. Y. 489; *Matter of Baker,* 83 App. Div. 530, 178 N. Y. 575; *Matter of Bullard,* 76 App. Div. 207. In *Matter of Cornell,* 66 App. Div. 162, 169, the court holds that the only exception to the rule that the inheritance tax statute applies only to gifts *causa mortis* is where fraud or an attempt to cheat the law is shown. See, also, *Matter of Birdsall,* 22 Misc. 180; *Matter of Palmer,* 117 App. Div. 360. A careful study of the Illinois cases will show that while apparently in conflict with the New York cases it is rather in form than substance. *Rosenthal v. People,* 211 Ill. 306, 307; *Merrifield v. People,* 212 Ill. 400; *People v. Kelley,* 218 Ill. 515. The transfer of testator's interest in the stock was *in præsenti* and was a gift *inter vivos*. *Rountree v. Dixon,* 105 N. C. 350, 11 S. E. 158; *Fetters v. Humphreys,* 19 N. J. Eq. 471, 479; *Cooper v. Jackson,* 4 Wis. 537; *Calkins v. Equitable B. & L. Asso.* 126 Cal. 531, 59 Pac. 30; *Dickerson's Appeal,* 115 Pa. St. 198, 8 Atl. 64; *Stone v. Hackett,* 12 Gray, 227; *Zillmer v. Landguth,* 94 Wis. 607; *Danforth v. Oshkosh,* 119 Wis. 262, 278, 279; Thornton, Gifts, sec. 435; *Vandenberg v. Palmer,* 4 K. & J. 204. If any interest was taxable it is only the interest reserved, viz. voting power. *People v. Kelley,* 218 Ill. 509. The attempted retention of the right to control the vote of the stock was ineffectual as a legal right.     Sec. 1760, Stats. (1898); 2 Cook, Corp. § 611; 1 Beach, Priv. Corp. § 306; Shepaug, Voting Trust Cases, 60 Conn. 553, 579; *Robotham v. Prudential Ins. Co.* 64 N. J. Eq. 673, 701; *Kreissl v. Distilling Co.* 61 N. J. Eq. 5, 14; *Clowes v. Miller,* 60 N. J. Eq. 179, 186; *White v. Thomas I. T. Co.* 52 N. J. Eq. 178.

*Hugh Ryan,* of counsel, for the appellants. [Mr. Ryan's brief is entirely an argument on the facts.]

The *Attorney General* and *T. C. Richmond* and *R. W. Jackman,* special counsel, for the respondent. They contended, *inter alia,* that the good will of a business is taxable. Fallows, Transfer Tax, 13; *Matter of Jones,* 69 App. Div. 237. For definitions of good will, see *Washburn v. Nat. W. P. Co.* 81 Fed. 17; *Matter of Brandreth,* 28 Misc. 468, 59 N. Y. Supp. 1092; *Rowell v. Rowell,* 122 Wis. 1. Good will is a valuable asset. *Lindeman v. Rusk,* 125 Wis. 210; *In re Keahon's Estate,* 113 N. Y. Supp. 926. The certificate of death of testator was properly admitted. Sec. 2, ch. 415, Laws of 1903, amending sec. 1024, Stats. (1898); sec. 1024a, Stats. (1898), as amended by ch. 384, Laws of 1903; subd. 24, sec. 3, ch. 4, Milwaukee City Charter; sec. 4160, S. & B. Ann. Stats.; sec. 4160, R. S. 1878; *McKinstry v. Collins,* 74 Vt. 147, 52 Atl. 438; *Krapp v. Metropolitan L. Ins. Co.* 143 Mich. 369, 106 N. W. 1107; *Hennessy v. Metropolitan L. Ins. Co.* 74 Conn. 699, 52 Atl. 490; *National Council v. O'Brien,* 112 Ill. App. 40; *Reynolds v. Prudential Ins. Co.* 88 Mo. App. 679; *Keefe v. Supreme Council,* 55 N. Y. Supp. 827; *Markowitz v. Dry Dock E. B. & B. R. Co.* 33 N. Y. Supp. 702; *Woolsey v. Trustees,* 84 Hun, 236, 115 N. Y. Supp. 573; *Knights Templar & M. L. Ind. Co. v. Crayton,* 110 Ill. App. 648, 70 N. E. 1066, aff'd 209 Ill. 550; *Howard v. Ill. T. & S. Bank,* 189 Ill. 568, 572; 9 Am. & Eng. Ency. of Law (2d ed.) 882, 883; 1 Greenl. Ev. (14th ed.) §§ 483, 484; 24 Am. & Eng. Ency. of Law (2d ed.) 187. A gift must be complete and irrevocable to avoid taking effect at death. *Reish v. Comm.* 106 Pa. St. 521. Possession defined. *Rice v. Frayser,* 24 Fed. 460, 463; *Sullivan v. Sullivan,* 66 N. Y. 37, 41; *Booth v. Small,* 25 Iowa, 177, 181; 28 Am. & Eng. Ency. of Law (2d ed.) 238. Enjoyment defined. *Clark v. Maguire,* 16 Mo. 302, 314. The possession of the stock under the trust deed was not absolute until after

testator's death. *In re Johnson's Estate,* 19 N. Y. Supp. 963; *In re Sharer's Estate,* 73 N. Y. Supp. 1057; *In re Cruger,* 66 N. Y. Supp. 636; *Appeal of Siebert,* 110 Pa. St. 329, 1 Atl. 346; *Wright's Appeal,* 38 Pa. St. 507; *Reish v. Comm.* 106 Pa. St. 521; *Appeal of Du Bois,* 121 Pa. St. 368, 15 Atl. 641; *Line's Estate,* 155 Pa. St. 378, 26 Atl. 728. The right to vote upon stock can be separated from the ownership of the stock unless the objects sought to be reached by the separation are unlawful. *Smith v. S. F. & N. P. R. Co.* 115 Cal. 584, 35 L. R. A. 309; *Mobile & O. R. Co. v. Nicholas,* 98 Ala. 92, 12 South. 723, 731, 732; *Brightman v. Bates,* 175 Mass. 105, 55 N. E. 809; *Chapman v. Bates,* 61 N. J. Eq. 658, 47 Atl. 638; *Clowes v. Miller,* 60 N. J. Eq. 179, 47 Atl. 345. The following cases have held inheritance tax laws constitutional: *Nunnemacher v. State,* 129 Wis. 190; *Knowlton v. Moore,* 178 U. S. 41, 59, 60; *Kochersperger v. Drake,* 167 Ill. 122; *Minot v. Winthrop,* 162 Mass. 113, 123, 124; *State v. Alston,* 94 Tenn. 674, 682; *State ex rel. Fath v. Henderson,* 160 Mo. 190; *Campbell v. California,* 200 U. S. 87; *State ex rel. Foot v. Bazille,* 97 Minn. 11, 106 N. W. 93; *Matter of McPherson,* 104 N. Y. 306, 10 N. E. 685; *In re Hickok's Estate,* 78 Vt. 259, 62 Atl. 724; *Magoun v. Ill. T. & S. Bank,* 170 U. S. 283, 42 L. Ed. 1037. The time of the transfer by will or the intestate laws is at the death of the decedent, and the tax occurs at that time. *Matter of Sloane,* 154 N. Y. 109; *Matter of Davis,* 149 N. Y. 539; *Matter of Westurn,* 152 N. Y. 93, 102; *Matter of Green,* 153 N. Y. 223, 228; *McCurdy v. McCurdy,* 197 Mass. 248, 83 N. E. 881; *People ex rel. Att'y Gen. v. Rice,* 40 Colo. 508, 91 Pac. 33; *Shelton v. Campbell,* 109 Tenn. 690, 72 S. W. 112; *Line's Estate,* 155 Pa. St. 378, 26 Atl. 728; *People v. Prout,* 53 Hun, 541, 6 N. Y. Supp. 457; *Commonwealth's Appeal,* 34 Pa. St. 204; *Comm. v. Bousman* (Pa. 1879) 12 Lanc. Bar, 189.

SIEBECKER, J.    The judgment imposing a transfer tax on
the beneficial interests of testator's children and grandchild
is assailed upon the ground of the invalidity of ch. 44, Laws
of 1903, as amended by ch. 249, Laws of 1903, in that this
law is an unjust and unreasonable exercise of the taxing
power, and in that it violates limitations of the state and fed-
eral constitutions.

The constitutionality of this law was considered and up-
held in the cases of *Nunnemacher v. State,* 129 Wis. 190, 108
N. W. 627, and *Beals v. State, ante,* p. 544, 121 N. W. 347.
In these cases it was decided that the act was a proper exer-
cise of the taxing power of the state; that the tax was a valid
one; that it is one in the nature of an excise tax, imposed on
the transfer of property by will, the intestate law of the state,
or "by deed, grant, bargain, sale or gift, made in contempla-
tion of the death of the grantor, vendor or donor, or intended
to take effect in possession or enjoyment at or after such
death;" that it was not a tax on property within the meaning
of sec. 1, art. VIII, of the state constitution; and that the
law is not violative of the constitutional guaranties of the
equal protection and the uniformity in operation of the laws.
The necessity for further consideration and discussion of these
questions does not arise on this appeal.    So far as they are
involved, we shall here regard them as ruled and determined
in those cases and shall consider that no further comment
or discussion is required.

The appellant urges that the law is invalid upon additional
grounds, namely, that it attempts to impose a tax on transfers
limited to vest on contingencies which may never happen or
to persons not in being or ascertainable, in making the tax
due and payable forthwith out of the property transferred,
by compelling parties to pay such tax on defeasible estates
which they may never own, and in contemplating the pay-
ment of penalties before any opportunity is afforded to pay

the tax.    The provisions of the law thus assailed will be con-
sidered so far as the facts and circumstances of the transfers
involved in this estate require.

The object and purpose of the law being to impose a tax
on the transfer of the property of testators, intestates, grant-
ors, bargainors, or vendors who transfer property in contem-
plation of death or by a transfer intended to take effect in
possession or enjoyment at or after such death, directs all con-
sideration of it to the right of the state to impose this burden
on the transfer by which decedent's property devolves on
those who take it under such transfers.    The right of the
state to exercise this power by the imposition of direct taxes
on property is therefore excluded from consideration, since
the tax is in no sense a direct tax on property, but is an ex-
cise tax imposed on the transfer.    See *Nunnemacher* and
*Beals Cases* and *State v. Railway Cos.* 128 Wis. 449, 108 N.
W. 594.    The provisions of the law are in substance those
of the New York transfer tax act; hence, so far as applicable,
the decisions of the courts of that state construing the law are
to be resorted to for aid in construing the one in question.
In *Matter of Westurn,* 152 N. Y. 93, 102, 46 N. E. 317, in
speaking of the right of the state to impose such a tax, it is
said:

"The devolution of the property and the right of the state
have their origin at the same moment of time.    The ascer-
tainment of the value of the taxable interest and the fixing
of the tax necessarily takes place subsequent to the death.
But the guide is the value at the time of the death, when the
interests were acquired."

The provisions of ch. 44, Laws of 1903, in words are ex-
pressive of the intent that the tax shall be imposed at the
time of the death of the transferor, in the manner and under
the conditions prescribed, upon the interests transferred by
him.    Sec. 1 specifically contemplates that the tax shall be
imposed on the transfer of a decedent's property under a will,

intestate law, or upon a grant or gift made in contemplation of death, and subd. 4 of this section declares that the tax shall be imposed when persons or corporations become beneficially entitled in possession or expectancy to the property or the income thereof. By subd. 6 it is enacted that the tax at the prescribed rates shall be upon the clear market value of the property transferred, exclusive of the exemption. The context of the law expresses as its purpose and object that the tax shall be imposed on the transfer at the time of the death of the decedent and rest as a lien on the property so transferred until paid.

The question as to when the tax so imposed becomes due and payable is presented under various claims and upon different considerations. Sec. 5 declares: "All taxes imposed by this act shall be due and payable at the time of the transfer," except as otherwise provided. It is also provided that in cases where the fair market value of estates, property, or interests therein are limited, conditioned, dependent, or determinable upon the happening of any contingency or future event and cannot by reason thereof be ascertained at the time of transfer, the tax shall become due and payable when the beneficiary shall come into the actual possession and enjoyment thereof. This portion of the law does not operate to postpone the imposition of the tax on the transfer beyond the time of the death of the transferor, for, as we have seen, the tax comes into existence at the time of the death of the decedent and remains a lien on the property involved until paid; but, since the fair market value thereof is not then ascertainable, it operates to postpone payment to the time when it is ascertainable, namely, when the contingency happens which gives the beneficiary the actual possession or enjoyment of the property transferred. Aside from this exception, all taxes are due and payable at the time of the transfer and then accrue. An examination of the provisions of the law fixing the time when the tax is declared due and payable and when it

accrues shows that these terms were used as equivalent, and
that it was intended to prescribe that the tax accrues at the
time of transfer, excepting as to those estates which are so·
limited, conditioned, dependent, or determinable upon future
contingencies that their value cannot be ascertained. As to
them the tax becomes due and payable and accrues at the time
of the actual possession or enjoyment. In this case, then, the
tax, at the moment of the death of Frederick Pabst, was im-
posed by operation of law on the taxable transfers and became
a lien on the property so transferred, and the lien persists
until the taxes shall be paid.

The provision made for a discount if the tax be paid
within one year from its accruing, the charging of interest on
payments deferred beyond eighteen months from the date
when the tax accrues, and the proceedings to be taken to ap-
praise the property after the transfer are attacked as discrim-
inatory and impossible of performance in the usual course of
the administration of a decedent's property. It is provided
that any interested party may apply for an appraisal, which
shall be made "immediately upon the transfer or as soon there-
after as practicable." Ample provision is therefore made for
parties to complete an appraisal and to have the assessment
and determination of the amount of the tax fixed within the·
time allowed for payment and thus avoid the penalties pre-
scribed.

We find no merit in the claim that the law imposes a tax
on transfers limited to vest on contingencies which may never
happen, to persons not in being or ascertainable, or on trans-
fers of defeasible estates which may never go to the parties
who are taxed. True, the tax is imposed on every transfer
defined by sec. 24 of the act, namely, "the passing of property
or any interest therein, in possession or enjoyment, present or
future, by inheritance, descent, devise, succession, bequest,
grant, deed, bargain, sale, gift or appointment in the manner
herein prescribed." As above stated, the tax is imposed at

the time of the devolution of the property, which is at the time of the transferor's death; but the law does not operate to enforce assessment and payment of the tax on interests or estates not vested or on those whose value cannot be ascertained by reason of the uncertainties of contingencies. Payment of the tax on such transfers is expressly postponed until the beneficiary comes into the actual possession or enjoyment thereof. The claim that the present owners of defeasible estates are compelled to pay the tax on the whole transfer, and that this operates to unjustly tax them, is not well founded, because provision for reimbursing them is made should it happen that such estates and interests should "be abridged, defeated or diminished." Subd. 3, sec. 13. Nor is such payment in the nature of an advancement by the first beneficiary. Of course the tax does not accrue unless the party becomes beneficially entitled in possession or expectancy to the property or the income thereof under the transfer. When the transfer confers the benefit of the estate, property, or income, then the beneficiary pays for what he is enjoying until the happening of a contingency deprives him thereof. In such event restitution is made out of the corpus of the estate or property. This operates to impose the tax only on the interest so actually received and enjoyed, and when an estate is terminated the tax is imposed on the party then receiving the property. Subd. 3 of sec. 13 makes provision for such a refund of overpayments to be enforced in the manner provided in sec. 8 of the act.

It is contended that the court erred in holding that the children of the decedent became beneficially entitled in possession or expectancy to any property or the income thereof under the will and the deed of gift of which the fair market value could be ascertained at the time of the death of the testator and donor. The claim that the widow's option to take one-sixth of the decedent's entire estate in lieu of the $50,000 per annum to be paid to her during her life out of the income of

the estate postponed the time of the accruing of the tax cannot be acceded to. It in no way affected the transfers actually made to the children under the will and the deed of gift. Under the conditions of the transfer the children became beneficially entitled to the property and the income thereof, subject to the annual payments to the widow for her life and the cost of Elspeth's education and maintenance during the widow's life until Elspeth's twenty-first year. There is nothing in these conditions which postpones their right to the property or the income thereof from the time of the decedent's death. Nor is their right thereto limited, conditioned, dependent, or determinable by a contingency, by reason of which the fair market value of their interests could not then be ascertained. The law provides a means of calculating the value of the interest of the widow and of Elspeth, and hence the fair market value of the remainder of the estate and the other interests was ascertainable.

It is further urged that *Emma Soehnlein's* interest and estate in the property transferred are not ascertainable in view of the conditions attached to the transfer. We do not so regard them. It is provided that if she should have no issue of the age of ten years living at the time of the widow's death, then the interest and estate transferred to her should remain in trust, and only the income thereof should be paid to her until she should have a child of the age of ten years. If no child of hers shall attain this age, then she is to receive during life only the income of the share of the estate set aside for her, and the body of this share is to go to her children surviving her or to the issue of any deceased child or children. If no child or the issue of any deceased child or children survives her, then her share is to go to the other heirs of the testator in equal parts. We have then a transfer in trust for her benefit, upon the condition that she shall receive only the income thereof during her life, unless she shall have a child which shall attain the age of ten years. The conditions of

this transfer are governed by the provisions of subd. 5 of sec.
13, because her rights, interest, and estate in the property so
transferred in trust are dependent upon contingencies or con-
ditions which may extend and change her interest and estate
from a life estate to one in fee in the property so transferred
to her.   The act [Laws of 1903, ch. 44, sec. 13, subd. 5, as
amended by Laws of 1903, ch. 249, sec. 2] provides that such
a transfer shall be taxed at the lowest possible rate under the
conditions on which it passes at the time of transfer, and that
the tax shall be due and payable forthwith out of the prop-
erty so transferred.   In this case the rate imposed on this
share, under the conditions existing at the time of decedent's
death, was the same as the rate which would be imposed on
this share if her brothers and sisters should eventually become
entitled thereto under the conditions of the will and deed,
being the rate prescribed for lineal issue by subd. 1, sec. 2.
It therefore follows that the trial court imposed the proper
tax on the transfer to *Emma Soehnlein,* that it accrued at de-
cedent's death, and was payable as that of the other children.
In the event that she shall enjoy no more than a life interest,
she will be entitled to be reimbursed, in the manner above in-
dicated, out of the corpus of the share so transferred to her.

It is contended that the court erred in holding that the deed
of gift was a transfer in contemplation of death by the donor.
The statute imposes a tax upon the transfer of property by
deed or gift, "made in contemplation of the death of the
grantor, vendor or donor, or intended to take effect in pos-
session or enjoyment at or after such death." Subd. 3, sec. 1.
The meaning of the words "in contemplation of death," as
used in the statute, must be inferred and ascertained from the
context of the act and the object sought to be accomplished by
the law.   It is manifest that they were intended to cover
transfers of parties who were prompted to make them by rea-
son of the expectation of death, and which, in view of that
event, accomplish transfers of the property of decedents in the

nature of a testamentary disposition. It is therefore obvious that they are not used as referring to that expectation of death generally entertained by every person. The words are evidently intended to refer to an expectation of death which arises from such a bodily or mental condition as prompts persons to dispose of their property and bestow it on those whom they regard as entitled to their bounty. This accords with the general objects and purposes of the law, namely, the imposition of a tax on the devolution of property involved in the demise of the owner. The supreme court of Illinois in *Rosenthal v. People,* 211 Ill. 306, 309, 71 N. E. 1123, interpreted these words in such a tax law as follows:

"A gift is made in contemplation of an event when it is made in expectation of that event and having it in view, and a gift made when the donor is looking forward to his death as impending, and in view of that event, is within the language of the statute."

The claim that the words can include only gifts *causa mortis* attributes to them too restricted a meaning. A transfer valid as a gift *inter vivos,* if made under circumstances which impress it with the distinguishing characteristics of being prompted by an apprehension of impending death, occasioned by a bodily or mental state which has a basis for the apprehension that death is imminent, would be a transfer made in contemplation of death within the meaning of the law.

In the case of *Estate of Merrifield v. People,* 212 Ill. 400, 405, 72 N. E. 447, in speaking on this subject, the court says:

"It is said, however, by appellants that a transfer of property made without consideration, in contemplation of death, is a gift *causa mortis,* and that the stipulation is that the gift was absolute. Hence it could not be a gift *causa mortis,* as a gift *causa mortis* is conditioned upon the death of the donor. A gift *causa mortis,* strictly speaking, applies only to personal property, and the gift is defeated if the donor recovers. In this case the subject matter of the transfers was both real and personal property and the transfers were absolute, and not

upon the condition that they should be revocable in case of the recovery of the donor.   They were, however, made in con-templation of his death.   They fall, therefore, more nearly within the description gifts *inter vivos* made in contemplation of death than within the designation gifts *causa mortis.*"   *In re Estate of Benton,* 234 Ill. 366, 84 N. E. 1026.

Though there is some divergence of view in the earlier cases in New York in their interpretation of these words, the view expressed in the Illinois cases was adopted in the recent de-cision of *Matter of Palmer,* 117 App. Div. 360, 102 N. Y. Supp. 236, as the proper one under the law as it then stood, which is substantially the same as the law of this state.

The statute was not intended to restrict persons in their right to transfer property in all legitimate ways, but it clearly manifests a purpose to tax all transfers which are accom-plished by will, the intestate laws, and those made prior to death which can be classed as similar in nature and effect, because they accomplish a transfer of property under circum-stances which impress on it the characteristics of a devolution made at the time of the donor's death.   It is strenuously con-tended that the trial court's finding of fact that the deceased's execution of the deed of trust, transferring the brewing com-pany's stock to his four children, was made in contemplation of death within this law, is not sustained by the evidence. The evidence on this issue is voluminous and so far as neces-sary has been incorporated in the statement of the case.

It is urged that the trial court was misled in its conclusion of fact on this issue through the error of receiving the death certificate in evidence.   The claim is that the statute prohib-iting decedent's attending physician from testifying to any fact concerning decedent's condition of which he had ac-quired knowledge in his professional capacity, and which it was necessary for him as a physician to know in order to properly prescribe for him, is a ground for the exclusion of the certificate as evidence.   We discover no force in this

claim. Physicians are required by secs. 1024 and 1024a,. Stats. (1898), to make the death certificate. This is made a. public record. Its contents are published to the world and are no longer treated as privileged. Was the certificate properly received as evidence of its contents? Sec. 4160, Stats. (1898), provides that when the records specified in the section are produced by the proper custodian and are supported by the oath of the person in lawful charge thereof that the record is what it purports to be and is genuine, it "may be admitted as *prima facie* evidence" of its material contents. The amendment of 1898 to the section contemplates that the records of a physician, which are included in the section, should be received as evidence. We are of opinion that the death certificate is included in this section and was properly admitted as *prima facie* evidence of the material facts stated therein. In the case of *Rohloff v. Aid Asso.* 130 Wis. 61,. 109 N. W. 989, a ruling excluding as original evidence a certificate of death made by a health officer was upheld. This ruling was evidently upon the ground that the amendment does not include the records of health officers.

The evidentiary facts relied on to show decedent's physical condition at the time of making the deed of gift and the will are in many respects uncontroverted. It is without dispute that he had had diabetes for many years, that he was fully informed of the state of his health during the period of his affliction, that he made a number of trips to parts of this and to foreign countries to build up his health, and that he received constant treatment from his physician to retard the progress of the disease. In the early part of the year 1903 his strength and health had become so impaired that his physicians advised him to pass the winter and the ensuing spring season in California. While upon this trip he had serious attacks of illness, one of which seriously imperiled his life. After his return to Milwaukee and during the early summer of 1903 he was under constant treatment, but showed signs of

declining vitality to such a degree that consultations of physicians were held concerning his condition.   No evidence indicative of improvement was then discovered, and complications became manifest during the summer and autumn of 1903.   True, there is conflict in the evidence of the experts called into the case and in the evidence of his physicians, the members of his family, and of others who observed him throughout his illness; but an attentive reading and examination of the evidence persuades us that the decedent, by reason of his apprehension of impending death, was led to make the deed of gift to transfer part of his estate to those whom he desired should have and enjoy it after his death.

Much stress is laid on decedent's declaration in the year 1900, while he was abroad for recuperation and rest, that in recognition of the valuable aid of his sons in building up his estate he intended, upon his return home, to dispose of part of his estate to his children.   It is significant that he did not then do so or in the immediately succeeding years.   He took no such steps until he had undergone the serious illness of 1903, which naturally admonished him of his rapid decline in strength and health.   Considering his condition, the execution of the deed of gift and the will simultaneously indicates that he was disposing of his property to those whom he regarded as the natural objects of his bounty, rather than that he was transferring it to them as compensation for worthy and valuable services rendered by them in its accumulation.   He knew his condition and was aware of the outcome to be inferred from his symptoms.   After his return to Milwaukee he conferred with his attorneys and made the deed of gift and his will.   These instruments were made and executed at the same time as one transaction.   The evidence, in our opinion, abundantly sustains the trial court's conclusion that the deed of gift was made in contemplation of death.

The court's finding as to the value of the stock in the brewing company is excepted to as erroneous.   The court found

the value of the brewing company's stock on January 1, 1904, the date of the decedent's death, to be $1,150 per share. The appraisers appointed by the county court reported the same value in January, 1905. The county court upon the trial valued it at $1,408.45 per share on January 1, 1904. The face value is $1,000 per share. The law requires that the tax shall be assessed on the clear market value of the property. It appears that there had been no general sales of this stock in the market. On the various occasions when he secured stock for the corporation or when there were dealings between members of the family, the decedent had dealt with this stock on the basis of its book value. The transfers shown were apparently made in reliance on the book value. The evidence adduced showed the dividends declared and paid for the years from 1896 to 1904, inclusive, and the value of the corporation's assets from 1896 to 1906, inclusive, exclusive of the good will of the business. In the deed of gift decedent declared the book value of 2,840 shares of stock to be $4,000,000. These items of evidence were offered as the best proof attainable to show the value of the stock. They were evidences of value, though they were not direct and general tests of market value. Many and various reasons are assigned why the evidence adduced on stock value fails to sustain the court's finding as to the value of the stock. These contentions are based on the claims that the dividends have been small, that the brewing plant has no convenient shipping facilities, that the stock transfers and the value of the corporation's assets, as carried on the books, are not reliable criteria, because they represent no more than the decedent's estimate of his business, and because there are no proper and necessary deductions for depreciation, losses, decrease in business, and other causes incident to the conduct and operation of so large and extensive an enterprise and its holdings. Special probative force is claimed for the opinion evidence of values adduced by appellants as tending to show that the

stock is worth less than its face value. After giving full effect to these considerations, we cannot say that the court erred by overestimating the actual value of the stock. The facts and circumstances regarding the business of the corporation and its properties, the progress, growth, and general financial results, furnish a basis for valuation. These evidences of the value of the stock are sufficient to sustain the conclusion of the trial court, and the findings of facts on this branch of the case must stand.

The court imposed a penalty of ten per cent. per annum from January 1, 1904, to March 1, 1907, upon the amount of tax found due from the appellants. Sec. 6 of the act provides:

"If such tax is not paid within eighteen months from the accruing thereof, interest shall be charged and collected thereon at the rate of ten per centum per annum from the time the tax accrued; unless by reason of claims made upon the estate, necessary litigation or other unavoidable cause of delay, such tax shall not be determined and paid as herein provided, in which case interest at the rate of six per centum per annum shall be charged upon such tax from the accrual thereof until the cause of such delay is removed, after which ten per centum shall be charged."

The question arises: Do the facts and circumstances of this case show that, by reason of "necessary litigation or other unavoidable delay," the tax cannot be deemed to have been determined and to have accrued? The record discloses that on December 31, 1904, the executors and trustees paid $58,714.72 to the state as the tax due on the transfer of property under the will, subject to the right to recover the same if the law should be declared invalid. This payment included no tax on the transfer made by the deed of gift and omitted items of property. The omitted items were added by way of a supplemental inventory, by agreement of all the parties to this litigation, and thereafter additional amounts, as finally determined and assessed, were paid to apply in dis-

charge of the tax upon the transfer by which the decedent's property passed to his heirs.   In view of the nature and conditions of the transfer and the consequent difficulty of ascertaining the value of the property, the estates, and the interests transferred, the devolution of decedent's property obviously presented to the executors, trustees, and his heirs doubtful and perplexing questions as to their liability for the transfer tax and the amount thereof.   It is clear from an examination of the case that uncertainty existed as to when the tax was due and payable and when it accrued, as to whether or not the transfer by the deed of gift was subject to taxation, as to the amount of stock included in the provision for Elspeth, as to the value of the stock of the brewing company, and as to other matters which will finally be determined by this litigation. We have no doubt that the situation and condition of affairs accounts for the delays by the executors, trustees, and the heirs of the decedent in beginning the administration and settlement of the estate and in paying the full amount of the transfer tax, and that they did not intend to defraud the state of any part of the tax justly due.   We are also of opinion that this litigation is necessary within the contemplation of the inheritance tax law to determine upon the tax, and that the uncertainties incident thereto necessarily occasioned unavoidable delays in the ascertainment and assessment of the tax.   Upon these considerations the penalty of ten per cent. per annum should not have been imposed upon the appellants on the amounts found due from them from January 1, 1904, to March 1, 1907.   Under the provisions of sec. 6 of the act, the tax on the transfer under the deed of gift and the will accrued at the time of the decedent's death, but the interest charge of ten per cent. per annum had not become due under the facts and circumstances shown in this case.

The result of these considerations is that the trial court's findings and conclusions are approved in all matters except as to the imposition of the ten per cent. interest charge on the amounts found due from the appellants.   The error com-

mitted in rendering a judgment including such interest requires reversal of the judgment. The cause must be remanded to the trial court for judgment on the findings as approved by this court. All the findings of the circuit court are approved on this appeal except the one finding ten per cent. interest due from January 1, 1904, to March 1, 1907.

*By the Court.*—Judgment reversed, and the cause remanded to the trial court for judgment on the findings as made by the trial court and approved by this court in accordance with this opinion.

Timlin, J., dissents.