## IN RE WADSWORTH'S ESTATE.

(No. 6,959.)

(Submitted April 13, 1932. Decided May 18, 1932.)

[11 Pac. (2d) 788.]

*Mr. L. A. Foot,* Attorney General, and *Mr. L. V. Ketter,* Assistant Attorney General, for Appellant, submitted a brief; *Mr. Ketter* argued the cause orally.

138

*Messrs. Cooper, Stephenson & Hoover* and *Mr. S. B. Chase,
Jr.,* for Respondents, submitted a brief; *Mr. Chase* argued the
cause orally.

.

MR. JUSTICE GALEN delivered the opinion of the court.

On May 30, 1930, Oliver F. Wadsworth, a resident of the city of Great Falls, died. On August 5, 1927, he executed a will by which, outside of household chattels and personal effects bequeathed to his wife, Rose M. Wadsworth, he devised and bequeathed all of the property of which he died seised, both real and personal, to Donald C. Watson of Boston, Massachusetts, Eliot Wadsworth of Boston, Massachusetts, and W. H. Hoover of Great Falls, Montana, as trustees, to be by them held in trust for the following purposes: (1) As to one moiety of the estate, the trustees were directed to pay unto his wife quarterly the

income thereof during her life; and (2) as to the other moiety thereof, they were directed to pay the income thereof quarterly to his children, Oliver Fairfield Wadsworth, Mary Zylpha Wadsworth and Eliot Miller Wadsworth in equal parts. The principal of the estate was to be divided in equal shares among the children named, who survived the testator, upon the sons reaching the age of forty years, and the daughter attaining the age of fifty years. Provision was made for the disposition of the income and the principal of the estate upon various contingencies resulting from the death of any of the beneficiaries named, and the word "moiety" as used in the will is defined to "mean approximately one-half." He therein declared that his reason for creating the trust provided for was due to his "desire to safeguard the interests of the estate * * * , by putting its management into the hands of men who have had the opportunity to obtain a wide experience in the investment, care and conservation of property." The same three persons named in the will as trustees were named as the executors, and it is directed that they shall serve in both capacities without being required to furnish any bond.

In the course of the administration of his estate, the executors of the will petitioned the district court to fix and determine the amount of inheritance taxes due the state of Montana, wherein it appears, among other things, that the decedent in his lifetime, on the fourteenth day of September, 1928, a little more than a year after making his will, executed a declaration of trust transferring certain described stocks to trustees which at the date of his death had a value of $117,532.50. The trustees named in the trust declaration are himself, his brother Eliot Wadsworth, and his son Oliver F. Wadsworth, Jr. Power was conferred upon them to hold, manage, invest, and re-invest the assets so transferred, and to collect the income therefrom accruing from time to time. After all reasonable costs and expenses of management, the trustees were directed to pay over to his wife, Rose M. Wadsworth, during her life, one-half the net income from the trust property in installments,

and the remaining one-half of the net income to his children, Oliver F. Wadsworth, Jr., Mary Zylpha Wadsworth and Eliot M. Wadsworth in equal shares. Other provisions were made for contingencies arising in the event of the death of any of the beneficiaries after his death, not necessary to be here recited. The trustees were given authority to sell and exchange, at their discretion, all or any part of the property, or any other property into which it had been exchanged or converted. It is provided that the property shall not be divided prior to the death of his wife, Rose M. Wadsworth; that when Oliver F. Wadsworth, Jr., and Eliot M. Wadsworth, his sons, shall each respectively reach the age of thirty-five years, there shall be distributed to them one-third of the trust property; and that when Mary Zylpha Wadsworth "shall have reached the age of forty-five (45) years, there shall be distributed to her one-third of said trust property. Should either of said named beneficiaries die before reaching the age herein specified, the share of said trust property to which said beneficiary would have been entitled, shall immediately be distributed to the legitimate issue of such beneficiary. If any beneficiary dies without legitimate issue, the share of the trust property to which such beneficiary would have been entitled, shall be equally distributed between the remaining beneficiaries or their legitimate issue by right of representation; but such remaining beneficiaries shall not receive their share of the principal trust estate until they reach the ages above specified in each case; and should either of said beneficiaries have attained the age above specified prior to the death of Rose M. Wadsworth, * * * then the distribution of the trust property to such beneficiary shall be made immediately upon the death of said Rose M. Wadsworth." It is provided that the trustees shall not be required to furnish bond or other security, nor be held liable for losses or mistakes in the management of the property.

Upon the hearing, the executors of the estate claimed that the property covered by the declaration of trust was not subject to the imposition of inheritance taxes, contrary to the posi-

tion taken by the state board of equalization. There is no dispute as to the amount of the taxes due the state because of the property going to the beneficiaries under the will, but only the value of that which is covered by the declaration of trust.

W. H. Hoover, the attorney who drafted the declaration of trust, and one of the petitioners, gave testimony in support of the claims made by the executors, as did also W. B. Finlay, a certified public accountant who had assisted the deceased for many years in keeping his books of account and in the preparation of his income tax returns. There was no other evidence introduced. The court found as facts, among other things: "That upon the 14th day of September, 1928, decedent executed a Declaration of Trust referred to in the petition for determination of inheritance tax, transferring to trustees certain stocks of the value of $117,532.50 at the date of death." And further, "that said Declaration of Trust was not executed by decedent in contemplation of death nor was it intended to take effect in possession or enjoyment at or after death, and that said transfer by said trust agreement was not a transfer of property in contemplation of the death of said decedent or intended to take effect in possession or enjoyment at or after such death," and made like conclusion as a matter of law. Pursuant thereto an order was duly entered on October 16, 1931, adjudging that the amount of tax due the state of Montana is the sum of $2,599.75, being the amount of taxes computed against the value of the property of the estate exclusive of that embraced in the declaration of trust, from which the state board of equalization has appealed.

The board's several specifications of error present but a single question necessary to be determined in disposition of this appeal, viz.: Did the court err in finding as a fact and concluding as a matter of law that the declaration of trust was not executed by Oliver F. Wadsworth in contemplation of death, and that it was not intended to take effect in possession or enjoyment at or after death, and that the transfer by the trust agreement was not a transfer of property in contemplation of

the death of decedent or intended to take effect in possession or enjoyment at or after his death?

So far as here pertinent the statute provides that: "Every transfer by deed, grant, bargain, sale or gift, made within two (2) years prior to the death of the grantor, vendor or donor, of a material part of his estate, or in the nature of a final disposition or distribution thereof, and without a fair consideration in money or moneys worth shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section." (Sec. 1, Chap. 105, Laws 1927.)

We are called upon to determine the meaning of the words ██ "in contemplation of death," as employed in the statute, and to determine from the record facts whether the declaration of trust executed by the decedent comes within their purview. If it does, such property is taxable as an inheritance. The phraseology of our statute is similar to that employed in the federal statutes, and also as to the time limitation (39 U. S. Stat., p. 778; 40 U. S. Stat., p. 1097), and on this appeal, both the appellants and the respondents cite and rely principally on decisions by the federal courts. The leading case to which attention is called by both parties to this appeal is that of *United States* v. *Wells*, 283 U. S. 102, 75 L. Ed. 867, 51 Sup. Ct. Rep. 446, 450. In that case, which was decided April 13, 1931, a little more than a year ago, Mr. Chief Justice Hughes, speaking for the court in interpreting the meaning of the words "in contemplation of death" as used in the federal statute, gave as clear and succinct a meaning to them as we think possible, and we avail ourselves of this opportunity to adopt his interpretation of them. He says that: "The quality which brings the transfer within the statute is indicated by the context and manifest purpose. Transfers in contemplation of death are included within the same category, for the purpose of taxation, with transfers intended to take effect at or after the death of the transferor. The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax. * * * As the transfer may otherwise

have all the indicia of a valid gift *inter vivos,* the differentiating factor must be found in the transferor's motive. Death must be 'contemplated,' that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition. * * * As the test, despite varying circumstances, is always to be found in motive, it cannot be said that the determinative motive is lacking merely because of the absence of a consciousness that death is imminent. It is contemplation of death, not necessarily contemplation of imminent death, to which the statute refers. It is conceivable that the idea of death may possess the mind so as to furnish a controlling motive for the disposition of property, although death is not thought to be close at hand. * * * The words 'in contemplation of death' mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is 'near at hand.' * * * It is apparent that there can be no precise delimitation of the transactions embraced within the conception of transfers in 'contemplation of death,' as there can be none in relation to fraud, undue influence, due process of law, or other familiar legal concepts which are applicable to many varying circumstances. There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition, and thus to give effect to the manifest purpose of the statute. * * * It is sufficient if contemplation of death be the inducing cause of the transfer whether or not death is believed to be near.''

''It is sufficient for present purposes that such gifts are motivated by the same considerations as lead to testamentary dispositions of property, and made as substitutes for such dispositions without awaiting death, when transfers by will or inheritance become effective. Underlying the present stat-

ute is the policy of taxing such gifts equally with testamentary dispositions, for which they may be substituted, and the prevention of the evasion of estate taxes by gifts made before, but in contemplation of death." (*Milliken* v. *United States*, 283 U. S. 15, 75 L. Ed. 809, 51 Sup. Ct. Rep. 324, 327.)

A will is always made in contemplation of death, but not necessarily, or even frequently, under pressure of the knowledge that death is near. The effect of the statute as a revenue measure is to subject the owner's property to the payment of an inheritance tax when a gift thereof is made by the donor in contemplation of death; for ordinarily the owner may give away or otherwise dispose of his property or any part of it, in any manner he sees fit. When not made in contemplation of death, and to take effect in possession and enjoyment during his lifetime, it is not subject to payment of an inheritance tax. (*People* v. *Burkhalter*, 247 Ill. 660, 139 Am. St. Rep. 351, 93 N. E. 379.)

Our statute was copied from the Inheritance Tax Law of Wisconsin (Laws of Wisconsin 1903, Chap. 44, sec. 1087, Wisconsin Supp. 1906; *In re Estate of Oppenheimer*, 75 Mont. 186, 44 A. L. R. 1470, 243 Pac. 589, 592; *State ex rel. Murray* v. *Walker*, 64 Mont. 215, 210 Pac. 90) ; and in heretofore interpreting and applying it in the matter of the *Estate of Oppenheimer*, supra, we quoted approvingly the language employed by the supreme court of Wisconsin in the case of *State* v. *Pabst*, 139 Wis. 561, 121 N. W. 351, as follows: "The statute was not intended to restrict persons in their right to transfer property in all legitimate ways, but it clearly manifests a purpose to tax all transfers which are accomplished by will, the intestate laws, and those made prior to death which can be classed as similar in nature and effect, because they accomplish a transfer of property under circumstances which impress on it the characteristics of a devolution made at the time of the donor's death." A recent Wisconsin case, decided April 5, 1932, that of *Harnischfeger's Will*, (Wis.) 242 N. W. 153, has held to the same interpretation. It seems plain that the phrase "in contemplation of death" is not confined to gifts *causa*

*mortis,* specifically defined by our statute (sec. 6885, Rev. Codes 1921), but embraces gifts *inter vivos,* despite the fact that they are fully executed. The best evidence of the decedent's state of mind at the time and his reasons for making the transfers are the statements and expressions of the decedent himself, supported as such statements are by all the circumstances connected with the transfers as well as the transfers themselves.

Applying the law to the case before us, here the donor ██ retained control over the property as one of the trustees named in the transfer, and contemporaneously with the execution of the declaration of trust by him, he required his wife, one of the beneficiaries named in the trust, to execute an agreement in writing reading as follows: "In consideration of the fact that O. F. Wadsworth, of Great Falls, Montana, is about to create a voluntary trust, the income from which is to be divided equally between his three children, upon the one part, and his wife, upon the other part, now therefore I, his wife, hereby agree and obligate myself to turn over to said O. F. Wadsworth, during his lifetime, the half of the said trust income which in said trust it was set forth shall come to me, and of course will come to me after his death."

The donor at the time of the execution of the trust was sixty years of age, and had been a cripple by reason of tuberculosis of the leg, and had to use crutches in getting about, although he drove his automobile and went to his office daily. He had many times discussed with the witnesses the matter of protecting his estate after his death. He seemed to have in mind, as the witness Finlay put it, that estates are often dissipated unless the owner thereof places restrictions on them in his lifetime, and he had been accustomed to receive an income from estates of his own relatives which had been placed in trust. He was partial to such a method of protecting his estate and had discussed with Finlay the making of such an arrangement for four or five years previous to the execution of the declaration of trust. He had been talking of the event of his death, that is, when it might occur, and the preservation of his estate. He said:

"Of course, there is no telling whether I am alive a year or ten years." He executed the declaration of trust in partial substitution of his will which had been promulgated a little more than a year before, and the disposition made of the property therein described was in somewhat similar manner to that provided in his will. We are of opinion that the declaration of trust shows on its face, by reason of the language employed, a disposition of property in contemplation of death within the meaning of our statute.

Where, as here, it appears the possibility of death subordinates the normal desire of one to retain ownership and control of his property, so that it is apparent that the gift is not the result of normal generosity, but rather is motivated by the same considerations which lead to testamentary dispositions, and is made as a substitute for them, then the gift may reasonably be held to have been made in contemplation of death. The Act provides that all gifts made within two years prior to the death of the grantor *are presumed to have been made in contemplation of death,* unless the contrary is made to appear. If the existence of an independent purpose desirable of achievement by the donor is not satisfactorily shown, the gift is presumed to have been testamentary in character and therefore taxable. The donor's state of mind at the time determines the category in which such a transfer is properly placed.

We think the evidence gives support to the presumption of the statute that the declaration of trust was executed in contemplation of death, rather than refutes it. Every provision of the transfer relates to the disposition of the donor's property upon the happening of contingencies after his death. The policy of the law will not permit the owner of an estate evading payment of inheritance taxes by any device which secures to him for life control of the property transferred in trust and the benefit of income therefrom during the life of the transferrer. (*In re Dolan's Estate,* 279 Pa. 582, 124 Atl. 176, 49 A. L. R. 858, p. 874, and note; 26 R. C. L. 223; 3 R. C. L. Supp. 1462.)

We are not unmindful of the fundamental rule that where there is material conflict in the evidence, this court will not

disturb the findings made by the trial court, thus substituting its judgment for that of the judge who heard the witnesses testify and observed their demeanor on the witness-stand. But where, as here, there is no dispute as to the facts, this court is in as favorable a position in applying the law as the district court, and in such instances will not hesitate to do so. (*Morgan* v. *Butte Central Min. & Mill. Co.*, 58 Mont. 633, 194 Pac. 496; *Cobban* v. *Hecklen*, 27 Mont. 245, 70 Pac. 805; *Gray* v. *Grant*, 62 Mont. 452, 206 Pac. 410.) And a judgment or order unsupported by the evidence will be reversed on appeal to this court. (*Tuttle* v. *Pacific Mutual Life Ins. Co.*, 58 Mont. 121, 16 A. L. R. 601, 190 Pac. 993.)

The order is reversed and the cause remanded to the district court of Cascade county, with directions to compute and assess the value of the property transferred by the declaration of trust under the inheritance laws of this state.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES FORD, ANGSTMAN and MATTHEWS concur.

Rehearing denied June 10, 1932.