234 P.2d 459 (1951)
In re MARSH'S ESTATE
STATE
v.
MARSH
No. 9027.
Supreme Court of Montana.
Decided July 17, 1951.
*460 Arnold H. Olsen, Atty. Gen., Mr. Charles V. Huppe, Asst. Atty. Gen., Mr. H. O. Vralsted, Daniel J. Sullivan, Tax Counsel, Board of Equalization, Helena, for appellant. H. O. Vralsted and Daniel J. Sullivan argued the case orally.
Worden & Worden, Missoula, for respondent. Donovan Worden and Donovan Worden, Jr., Missoula, argued the case orally.
METCALF, Justice.
This is an appeal by the State of Montana from an order fixing inheritance tax. The executrix, May D. Marsh, is the surviving wife of the decedent, C.H. Marsh. The appraised value of the estate is $154,158.40.
At the time of his death C.H. Marsh was co-owner of 17 United States Savings Bonds, Series E and G. One of these bonds was in the name of C.H. Marsh and his son, W.T. Marsh, as co-owners. Its actual cash value was $86. A second bond of the same value was in the names of C.H. Marsh and his daughter, Hilda Marsh, as co-owners. The remaining 15 bonds in *461 the names of C.H. Marsh and his wife, May D. Marsh, as co-owners, had an actual cash value at the time of death of $45,842. The district court determined that but one-half of the value of these bonds was subject to tax and from that determination the state has appealed.
The court found that decedent and his wife had lived in Missoula county as husband and wife for about 60 years and together they accumulated property, "he taking care of the business and she performing her duties as housewife." Money earned from Mr. Marsh's business was used to purchase real estate and in 1942 the real property was sold and the proceeds invested in the bonds.
The court's order fixing the tax continued: "Herein the equities are between the surviving spouse, who has aided and assisted her husband, decedent, in the earning and accumulation of these bonds, and the State Board of Equalization. We are not considering herein a survivor who takes gratuitously but a survivor who over a period of fifty years helped to accumulate this property, i.e., the monies with which these bonds were purchased. This property was accumulated by them, the husband and wife during coverture. * * *
"It is significant that said section 91-4405, R.C.M. 1947, includes within its purview not only those properties held jointly as in joint tenancy but also tenancies by the entirety, which are defined as follows: `An estate by the entireties is defined as an estate held by husband and wife, by virtue of title acquired by them jointly after marriage'. Vol. 30 C.J., page 564, section 97. From this we may conclude that the provisions of this section of the inheritance tax law were intended by the state legislature to be particularly applicable to joint holdings of property as between the husband and wife and that the survivor should be taxed only on one-half of the value of the property held in joint tenancy or tenancy by the entirety, otherwise the words: `or tenants by the entirety' as used in said section 91-4405, would not have been used in the section. * * *
"Herein the property involved was acquired jointly by Charles Marsh, decedent, and his surviving spouse, May Marsh, after the marriage, by the joint labor of each."
Under most conditions, prior to the amendment of R.C.M. 1947, [1] sec. 91-4405, series E and G bonds of the United States government were not joint property taxable under that section, but were the property of the co-owner who retained possession of them and were taxable under R.C.M. 1947, sec. 91-4402, as a transfer intended to take effect at or after death. State Board of Equalization v. Cole, 122 Mont. 9, 195 Pac. (2d) 989; In re Brown's Estate, 122 Mont. 451, 206 Pac. (2d) 816. R.C.M. 1947, sec. 91-4405, is applicable only to property jointly held. Petition of Hanson (State v. Hanson), Mont. 232 Pac. (2d) 342.
The trial court determined the case at bar on the theory that [2-5] by virtue of the relationship between husband and wife a tenancy by the entirety was created in these co-ownership bonds. No reason was given for failure to assess a tax on the bonds in which Marsh's son and daughter were co-owners. At common law where real property was held in the names of a husband and wife they held it as tenants by the entirety and not as joint tenants or tenants in common. 26 Am. Jur., Husband & Wife, sec. 68, p. 695. In tenancy by the entirety there must be the four unities of a joint tenancy and an additional unity, that of person arising out of the common lay fiction that husband and wife are one. 41 C.J.S., Husband & Wife, sec. 33b, p. 456. In addition to the fact that the parties must be husband and wife at the time the estate was created, the chief characteristic distinguishing a tenancy by the entirety from a joint tenancy is that one of the co-tenants acting alone cannot sever the estate. Fairclaw v. Forrest, 1942, 76 U.S. App. D.C. 197, 130 Fed. (2d) 829, 143 A.L.R. 1154, certiorari denied 318 U.S. 756, 63 S.Ct. 531, 87 L.Ed. 1130. Since the enactment of the Married Women's Act, secs. 36-101 to 36-131, the common law disabilities of married women have been removed. Now married women may hold property with their husbands as tenants in common, R.C.M. 1947, sec. 36-108; In re Mahaffay's Estate, 79 Mont. 10, 254 Pac. 875; Isom v. Larson, 78 Mont. 395, 255 *462 Pac. 1049, and as joint tenants, R.C.M. 1947, sec. 36-108; Emery v. Emery, 122 Mont. 201, 200 Pac. (2d) 251; Shaw v. Shaw, 122 Mont. 593, 208 Pac. (2d) 514.
Every interest created in favor of a husband and wife is an interest in common unless expressly declared to be a joint interest. R.C.M. 1947, sec. 67-313. Section 67-307 declares the ownership of property by several persons is either: (1) Of joint interests; (2) of partnership interests; (3) of interests in common.
The common law rule that a conveyance to a husband and wife [6, 7] created a tenancy by the entirety has been replaced by the statutory rule that such a conveyance creates an interest in common unless expressly declared to be a joint interest. A tenancy by the entirety could be created only when the intention to create such tenancy was clearly and unmistakably expressed.
However, government bonds because of the special nature of the [8] contract can never be held in tenancy by the entirety. The characteristic that distinguishes the tenancy by the entirety from other cotenancies is that neither of the cotenants alone can terminate the tenancy or sever the estate. Either cotenant may sell government bonds upon surrender of the bond and receive the full accrued value. The tenancy is thus severed and one cotenant can reduce the entire property to his own possession and his cotenant receives nothing.
The Thirty-Second Legislative Assembly amended R.C.M. 1947, [9-11] sec. 91-4405, Chapter 181, Laws of 1951, so that after the effective date of that Act government bonds held by cotenants are taxed as joint property. However, in estates where the death occurred before March 1, 1951, the tax on government series E and G bonds is generally imposed by section 91-4402. If the person who advanced the consideration for the purchase of the bonds relinquishes dominion and control over them, they are treated as a gift and taxed as a transfer in contemplation of death. After the expiration of the presumptive period and in the absence of proof to the contrary, the gift is an absolute inter vivos gift and not taxable. If there is no delivery of the bonds by the purchaser to the cotenant whose name appears thereon, the transfer is one to take effect at or after death and taxable as such. State Board of Equalization v. Cole, supra; In re Brown's Estate, supra.
The common law rule that a wife owes a duty to her husband to [12] attend to her household duties and to work for the advancement of her husband's interests was not changed by the Married Women's Act. R.C.M. 1947, sec. 36-116; Gates v. Powell, 77 Mont. 554, 252 Pac. 377. Those services which a wife owes her husband do not create for her a joint interest in his estate. The husband's obligation is to support his wife out of his property or by his labor, R.C.M. 1947, sec. 36-103, and neither has any interest in the property of the other. R.C.M. 1947, sec. 36-104; Emery v. Emery, supra; Shaw v. Shaw, supra.
The trial court erred in holding that the bonds held by Mr. and Mrs. Marsh as co-owners were held by them as tenants by the entirety.
The cause is remanded with directions to take such further evidence as is necessary to determine whether these bonds were transferred in contemplation of death or were retained by Mr. Marsh so that Mrs. Marsh and her son and daughter took them by transfer at or after death.
ADAIR, C. J., and BOTTOMLY, J., concur.
ANGSTMAN, Justice (concurring in part and dissenting in part).
Much of the foregoing opinion is based upon prior decisions with which I disagreed. To the extent that it does so, I concur in it solely on the ground of stare decisis.
Since the case is being remanded for further hearing, I think it is important to ascertain who held title to the real estate which was sold to obtain the money used to buy the bonds in question. The court found that the real estate "had been held by them [referring to Mr. and Mrs. *463 Marsh] and owned by them for a period of twenty years before the sale thereof." If this was held in the names of Mr. and Mrs. Marsh, either as joint tenants, tenants in common, or in partnership, then I think the conclusion of the trial court would be warranted under the last two lines of R.C.M. 1947, sec. 91-4405, depending upon the interest of each in the real property, and this without reference to the question of delivery of the bonds.
Likewise in determining whether there was a delivery of the bonds, it should be kept in mind that both of two joint owners cannot each have exclusive possession of them. I think if Mrs. Marsh and Mr. Marsh each had access to the bonds, then there was sufficient delivery to constitute her a joint owner with her husband, regardless of the source of the purchase money. It is my view that if Mrs. Marsh as well as her husband had access to the bonds, then there was a joint ownership thereof, and section 91-4405 governs as to their taxability, i.e., they are taxable to the extent of fifty percent of their value unless the court finds that the last two lines of that section have application.
FREEBOURN, Justice.
I dissent. I believe the judgment of the lower court should be affirmed.