STATE OF MONTANA, AND THE STATE BOARD OF EQUALIZATION OF THE STATE OF MONTANA, APPELLANTS, v. MABEL M. RICE, RESPONDENT.

IN THE MATTER OF ESTABLISHING DEATH OF JAMES E. RICE TO TERMINATE JOINT TENANCIES AND TO DETERMINE INHERITANCE TAX.

No. 9666.
329 Pac. (2d) 451.
Submitted March 20, 1958. Decided Aug. 11, 1958.

H. O. Vralsted, Sp. Asst. Atty. Gen., Forrest H. Anderson, Atty. Gen., for appellants.

H. O. Vralsted, Sp. Asst. Atty. Gen., argued orally.

J. E. McKenna, Lewistown, Donald E. Ronish, Lewistown, for respondent.

Donald E. Ronish, Lewistown, argued orally.

THE HONORABLE GEORGE J. ALLEN, District Judge, sitting in place of MR. JUSTICE BOTTOMLY.

James E. Rice died December 11, 1954, at the age of 74 years, as a result of injuries sustained in an automobile accident. At the time of his death he was the owner of certain

property as a joint tenant with his wife, Mabel M. Rice, respondent herein.

On December 17, 1954, Mabel M. Rice, pursuant to section 91-4321, R.C.M. 1947, filed her petition to terminate the joint tenancy between herself and her husband, so as to show the vesting of the title to the joint tenancy property, in herself as the survivor. Also in the same petition she alleged that proceeding had been or was pending, to determine whether any inheritance tax was payable by reason of the death, and asked the court to determine the inheritance tax liability, if any, to the State of Montana, and prayed that the court appoint appraisers to ascertain and report to the court the value of the joint property.

Appraisers appointed by the court pursuant to the said petition returned an appraisement of the property owned in joint tenancy, and a copy thereof was served upon the State Board of Equalization of the State of Montana (hereinafter called the State Board). Included in said appraisement was 1,010.4 acres of farm land appraised in the sum of $38,750, which farm land had been by deed granted to James E. Rice and Mabel M. Rice, as joint tenants, by deed dated December 9, 1952, being within three years prior to the death of said James E. Rice.

There was also filed with the court Forms No. 2-F and 3-A, and at the insistence of the State Board, there was filed an application for exclusion of one-half the value of the farm land from inheritance tax.

Thereafter, such proceedings and hearings were had which resulted in the court making and entering an order and judgment excluding from inheritance tax one-half of the value of the farm land, and an order determining the inheritance tax due on the remaining portion of the joint property.

This appeal is taken by the State of Montana and State Board of Equalization from the order and judgment excluding property from inheritance tax, and from the order determining the amount of inheritance tax due. The specifications

of error raised but three questions: first, the jurisdiction of the court to make the judgments, and orders complained of; second, the correctness of the deductions allowed by the court in determining the clear market value of the property; and third, the correctness of the court in excluding one-half of the value of the farm land from inheritance tax.

These questions will be considered in the order named. Appellants contend that the District Court did not have jurisdiction or authority to proceed with determining the inheritance tax because the petitioner and respondent herein, Mabel M. Rice, failed to proceed in the manner provided by law.

Respondent filed her petition pursuant to section 91-4321, R.C.M. 1947, which reads in part as follows:

"Termination of life estate or joint tenancy. (1) When the death of a person terminates a life estate or affects a joint tenancy any person interested in the property or in the title thereto, in which such life estate was held, or such joint tenancy existed, may file in the District Court of the county in which the property, or some part thereof, is situated, his verified petition, setting forth such facts and particularly describing the property and his interests therein, and naming all persons who claim or might claim an interest therein as personal representative, heir, devisee or legatee of the decedent, so far as known to the petitioner.

\* \* \* \* \*

"(4) If no proceeding has been had or is pending to determine whether any inheritance tax is payable by reason of such death, the court or judge may determine in a proceeding under this section whether an inheritance tax is due by reason of the death of such person, and the amount thereof, if any. If it is desired to have the court or judge determine the liability for inheritance tax, and the amount thereof, appropriate allegations to that effect shall be included in the petition, and a copy of such petition, and notice of the time and place of hearing, shall be mailed to the state board of equalization by

the clerk of the court, at least ten (10) days before the date set for hearing.''

Appellant's brief states: ''There is a serious question if section 91-4321, supra, is valid in respect of the provision relating to inheritance taxation because that part was not included in the title in Chapter 130, Laws of 1943, a constitutional mandate. Section 23, Article V, Constitution of Montana.''

This section as it now is written was enacted in 1943, and ▮ was carried forward in our Codes of 1947 without change. The 1947 Codes were regularly adopted by the Legislature with this act incorporated therein without reference to its original title. Therefore, the defect, if any, complained of in the brief of appellant was cured by its adoption into the 1947 Code. Cashin v. Northern Pac. Ry. Co., 96 Mont. 92, 28 Pac. (2d) 862, 870; State v. Garcia, 132 Mont., 600, 319 Pac. (2d) 962.

Appellant further argues that the Court was without jurisdiction in that said section 91-4321, supra, pursuant to which respondent filed her petition, is a general provision with respect to inheritance tax determination, and that she ignored the special provision of section 91-4441, R.C.M. 1947, a section of the Inheritance Tax Act of Montana which reads in part as follows:

''* * * any person interested in such estate, may make application for such special or general administration as may be necessary for the purpose of the adjustment and payment of such tax, if any, or if no tax is due, for an order determining that fact.''

The appellant contends that section 91-4441, supra, will pre-▮ vail over section 91-4321, supra, and therefore it is a prerequisite to the District Court's jurisdiction to determine the inheritance tax due, that a special or general administrator be appointed, and cites In re Wilson's Estate, 102 Mont. 178, 195, 56 Pac. (2d) 733, 105 A.L.R. 367, as holding that the Inheritance Tax Act of Montana is a special law dealing with

that subject alone, and controls all general rules covered by its provisions.

We agree with the holding in In re Wilson's Estate, supra, but do not see its application here. Section 91-4321, supra, simply provides in essence, that a petitioner in a petition to terminate a joint tenancy may, by proper allegations, have the inheritance tax determined under the inheritance tax laws of the State of Montana. We see no objection to the petitioner in such a proceeding doing every act required by our Inheritance Tax Act, including the filing of an inventory of all property of deceased, and the making and filing of the required State Board Forms No. 2-F and 3-A reports, or the petitioning of the District Court for exclusion of property from inheritance tax. Nowhere do we find any requirement for anyone to petition the court to exclude property from inheritance tax. If the State Board believes that property subject to inheritance tax is not reported, the State Board may in its objections to the 3-A report, set forth the same, and the court will determine the matter at the hearing to determine the tax due.

The second question for our determination is the correctness of the deductions allowed by the court in determining the clear market value of the property. The record shows the court allowed the following deductions in its order determining inheritance tax: (1) Debts owing by decedent at date of death, $176.10; (2) expenses of last illness unpaid at date of death, $752.65; (3) expense of funeral, $885.40; (4) attorney fee, $500; (5) filing fees, $5; (6) estimated closing expenses, $5.

R.C.M. 1947, section 91-4407, as amended, sets forth the deductions allowed in any proceeding wherein inheritance tax is determined. It reads as follows:

"Tax on clear market value—deductions. The tax so imposed shall be upon the clear market value of such property passing by any such transfer to each person, institution, association, corporation or body politic, at the rates hereinafter

prescribed and only upon the excess of the exemption hereinafter granted to such person, institution, association, corporation or body politic, and in determining the clear market value of the property so passing by any such transfer the following deductions, and no other shall be allowed; debts of the decedent owing at the date of death, expenses of funeral and last illness, all Montana state, county, municipal and federal taxes, including all penalties and interest thereon, owing by decedent at the date of death, the ordinary expenses of administration, including the commissions and fees of executors and administrators and their attorneys actually allowed and paid, and federal estate taxes due or paid.''

Every claim for exemption should be denied unless the exemption is granted so clearly as to leave no room for any fair doubt. Cruse v. Fischl, 55 Mont. 258, 267, 175 Pac. 878; In re Wilson's Estate, supra.

Very clearly, then, the items allowed by the court for debts, expenses of last illness, and funeral expenses, were properly allowed. However, just as clearly the court should not have allowed as expenses, the attorney fee, filing fee, and estimated closing expenses, for these are all expenses of administration, and there being no estate, there could be no expenses of administration.

The last question is the correctness of the court in excluding one-half the value of the farm land from the inheritance tax. Respondent claims that the farm land should be excluded because at the time of the death of her husband she was the owner of one-half of the farm land. Appellant admits her ownership of one-half the farm land, but claims her ownership was by virtue of a transfer made to her by her husband in contemplation of death, and therefore is taxable.

R.C.M. 1947, section 91-4402, as amended, reads in part as follows:

''Transfers in contemplation of death. When the transfer is of property made by a resident or by a nonresident when such nonresident's property is within the state, or within its

jurisdiction, by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death. Every transfer by deed, grant, bargain, sale or gift, made within three (3) years prior to the death of the grantor, vendor or donor, of a material part of his estate, or in the nature of a final disposition or distribution thereof, and without a fair consideration in money or money's worth shall, unless shown to the contrary be deemed to have been made in contemplation of death within the meaning of this section * * *''

The transfer of the one-half interest in the farm land to ▮▮▮▮ respondent, having been made within three years prior to the death of the grantor, is presumed to have been made in contemplation of death, unless shown to the contrary. Thus, we have a statutory disputable presumption which makes a question of fact to be decided by the court. Our court stated in McMahon v. Cooney, 95 Mont. 138, 25 Pac. (2d) 131, 133: ''A statutory disputable presumption is satisfactory if uncontradicted. Renland v. First Nat. Bank, 90 Mont. 424, 4 Pac. (2d) 488. The statute commands that it must be followed if uncontroverted. Section 10604, Rev. Codes 1921 [now R.C.M. 1947, section 93-1301-5]. Whether sworn testimony to the contrary is sufficient to rebut such a statutory presumption is a question for the triers of fact to determine, except where the facts proved are overwhelmingly against the presumed facts and permit of but one rational and reasonable conclusion. Renland v. First Nat. Bank, supra; subd. 2, section 10672, Id. [now R.C.M. 1947, section 93-2001-1].''

The court found in this case that the transfer of title to appellant of the farm land by the deed dated December 9, 1952, was not made in contemplation of death, and appellant contends such a finding by the court is not supported by the evidence.

A review of the evidence discloses that at the time the deed in question was made the grantor, although 72 years of

age, was in good health, and it is significant to note that grantor's death was not a result of illness, but was caused by an automobile accident; that the contract for the purchase of the farm land in 1938 was made between the seller and James E. Rice and Mabel M. Rice, but the deed was made in error to James E. Rice only; that this error was not discovered until James E. Rice was advised thereof by his attorney, the first of December 1952; that both James E. Rice and Mabel M. Rice were greatly surprised that the error had been made in the drafting of the deed for both had until then believed that the farm land was in both their names; that immediately James E. Rice caused the deed of December 9, 1952, to be made and executed for the purpose of correcting the mistake so as to place the title in the names of himself and his wife as it was intended originally; that such deed was immediately recorded to accomplish the above purpose.

Finding credible evidence in the record to support the finding of the court that the deed was not given in contemplation of death, the judgment will not be disturbed on appeal. The cause is remanded with directions to disallow the exemptions allowed for the filing fee, attorney fee, and other closing expenses in determining the clear market value of the property; and as amended the orders and judgments are affirmed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES CASTLES and ANGSTMAN, concur.

MR. JUSTICE ADAIR: (dissenting).

When James Rice died at the age of 74 years he had no property whatever standing in his own name alone. The only property in which he had any interest at the time of his death was property held in *joint ownership* as is shown by the inventory and appraisement filed herein.

All interest which Rice had in such *jointly owned* property terminated absolutely upon his death and his surviving joint tenant thereupon and *instanter* became the sole owner of all

the property theretofore held in joint ownership, and thus, the decedent James Rice had and left no estate whatever that was subject to the jurisdiction of the general probate laws. Rice's property did not pass by will nor did it pass by the succession statutes of the State of Montana.

The property interests so terminated by the death of James Rice are subject only to the provisions of section 91-4321, R.C.M. 1947, which is a special statute designed to provide for the administration of life estates or joint tenancies. The provisions of this statute apply wherever jointly held property interests are terminated by reason of death—even though there may be other property left by the decedent that may be subject to the general probate statute—or, as here, where the entire interests of the decedent consists *only* of property subject to the provisions of the special statute, section 91-4321, supra.

Here the surviving joint tenant quite properly proceeded pursuant to the provisions of section 91-4321, and instituted proceeding for the specific purpose of having the court legally determine the joint tenancy held by James Rice in his lifetime and also to have determined the inheritance due thereon following his death.

Section 91-4321, very clearly sets forth the necessary procedure that must be followed to accomplish such results. The statute requires that a petition be filed in court and that the court hold a hearing thereon after first giving notice to the Board of Equalization and to the other necessary parties in order to determine the effect the death of the decedent upon the jointly held property, and in order to determine the inheritance tax. Such procedure necessarily contemplates that such legal proceedings be conducted by an attorney versed in the law and thereof entitled to be compensated for the professional services rendered. Nowhere does the law provide that such attorney must work without compensation. Surely the attorney is worthy of his hire.

Following the procedure set out in section 91-4321, the

surviving joint tenant with the aid of an attorney at law, obtained an order of court terminating the joint tenancy and determining the inheritance tax and thereby such surviving joint tenant became obligated to pay an attorney fee for the services rendered.

The Board of Equalization objects to the procedure prescribed by statute and here followed and it specifically objects to the allowance, in the computation of the inheritance tax, of a reasonable attorney fee ordinarily and necessarily incurred and required to be paid by the surviving joint tenant for the services rendered at his special instance and request. There is neither rhyme nor reason in the position taken by the majority opinion which holds that such attorney fee is not an allowable deduction for inheritance tax purposes.

The Board of Equalization's principle argument is based upon the proposition that R.C.M. 1947, section 91-4441 provides the one and only correct procedure and that it must be followed in determining inheritance tax and in administering this estate. A mere reading of the statute refutes such argument.

Section 91-4441, supra, is only pertinent when no application for administration of the decedent's estate is made within six months after his death, or when administration has been had but no determination of an inheritance tax has been made or attempted. However in the instant matters the surviving joint tenant has not slept on her rights but she has had an administration to judicially terminate the interest of the decedent, James Rice, and has obtained an order determining the inheritance tax. Obviously the provisions of section 91-4441 are inapplicable to the facts which here obtain.

The Board's argument simply stated is this:

Where, as here there are no property interests subject to the general probate law, nevertheless it is still necessary to have an administrator appointed and to conduct a special administration before the board may allow the deduction from

the inheritance tax of the attorney fees necessarily incurred in having the necessary legal determination made.

Stated another way the Board's argument would be:

Although section 91-4321 is the special statute dealing with these particular property interests and although no other statute confers jurisdiction over such property interests, nevertheless it is required that the court appoint an administrator to administer property over which he would have no jurisdiction in order that attorney fees necessarily incurred would be allowed as a deduction from inheritance tax.

A statement of the proposition refutes its validity. Section 91-4321 in its present form was enacted in 1943. Ever since that time in countless proceedings under this statute the Board of Equalization has acquiesced in the allowance of attorney fees as a proper deduction for inheritance tax purposes. In this case for the first time the Board asserts that such fees are not within the provisions of section 91-4407 of the inheritance law.

The Board's present contention places too narrow an interpretation on the word administration. They would contend that an administration is only that type of an administration as contemplated within the general probate statutes. The only interest the Board of Equalization has in an estate is to see that the proper inheritance tax is computed and paid. That such was obviously the legislature's intent is clear from a reading of sections 91-4441 and 91-4442. These statutes on special administration to determine tax, and providing compensation for procuring such determinations apply to the cases where an estate has never been administered, or if it has been administered, where the inheritance tax has not been determined, or to the case where all of an estate was transferred in contemplation of death and no action has been taken by the donees to pay the lawful inheritance tax.

These are not general probate administration procedures— they are special probate administration procedures and I do not believe the Board should successfully contend that the ex-

penses of administration incurred in those proceedings would not be deductible expenses for inheritance tax purpose. Section 91-4321 provides a special administration procedure to cover the contingency of life estates and joint tenancies not otherwise provided for in the statutes. It provides as does the general probate code and the other special administration provisions, for an *administration* to determine inheritance tax.

Section 91-4407, supra, in speaking of administration does not confine it to that administration provided for by specific statutes. All proceedings to determine the inheritance tax to be paid on property within the purview of the inheritance tax laws are ''administrations'' with the inheritance tax act.

It certainly was not the Legislature's intent that where one of two or more owners of jointly held property dies, the survivor or survivors shall be required to perform the needless and useless acts of having administrators or special administrators appointed when as a matter of fact and law the latter would have no jurisdiction whatever over the property but would serve only to establish a deduction, for inheritance tax purposes only, of the attorney fees which must *necessarily* be incurred in the determination of such inheritance tax.

This is merely an auxiliary administration, specially designed to cover these special cases. By the very nature of the statute the determination of inheritance tax, an attorney fee becomes a necessity and a requirement and is a deduction from that to which the surviving tenant succeeds. Such fee is a proper and an ordinary expense of administration. Such fee stands on an equal footing with the counsel fee liability incurred by the administrator under the general administration statutes.

With the interpretation of the statute made by the majority opinion a serious problem will now be presented in all instances where the interests of the decedent are mixed as where he dies leaving a general or special probate estate and in addition, at the date of his death, owns property jointly with other persons. The general practice is to probate the estate

and to judicially terminate the joint tenancy in one and the same proceeding where the inheritance tax is also determined. However in the light of the majority opinion herein the Board would now require the making of an allocation of the particular attorney fee earned in the various separate proceedings, even though the proceedings are had as one integral unit. Who then will be the judge of what the attorney shall be paid for his services in obtaining an order judicially terminating the joint interests and what is the attorney to be paid for probating the estate? Will the Board be empowered to set aside the contract made between the attorney and his client and arbitrarily set the fee for the various services performed by the attorney as the Board sees fit? Obviously, to effect tax savings the judicial termination of the joint tenancy will be done free and the actual labor cost will be added on to the probate estate fee.

Will it be necessary in order that the fee may be a valid deduction that jointly held property interests must be administered under the provisions of wholly inapplicable special administration statutes to the end that the allowable deduction may be safeguarded? Thus would mere form control all inheritance tax determinations and no weight would be given to the substance of the procedure actually necessary.

The inheritance tax determination contemplated by section 91-4321 is the only thing with which the Board of Equalization is concerned. The Board's administration is for inheritance tax purposes. The law contemplates that in this administration the administrator, that is the surviving joint tenant, will incur attorney fees to compensate the attorney for professional services rendered including his time and labor expended in behalf of the administrator. These attorney fees are within the provisions of Section 91-4407 and they should be held to be deductible.

I do not agree with the majority decision on the issue as to whether the transfer here was made in contemplation of death.

Some two years before his death, James Rice consulted an attorney about a will. He asserted he had read some articles about estate planning and desired to put his affairs in order. While discussing the will a question arose as to the form of ownership of his property. Mr. Rice thought it was all in joint tenancy but when the record title was examined it was found that Rice was the sole owner in 1952 and that he had been the sole owner since 1938 of the real estate comprising his farm. Upon learning that the record title was in his name, Rice thereupon had the property transferred to his son and then from his son back to himself, James Rice, and wife, as joint tenants with right of survivorship.

The joint tenancy deed to himself and his wife in 1952 was a gift by James Rice to his wife of the value of one-half of the property transferred.

No will was offered for probate because the deed made in lieu of a will put James Rice's affairs in order. All property in which Rice had any interest was jointly held with his wife.

The transfer of the one-half interest in his ranch property within three years of his death was a transfer in contemplation of death unless shown to the contrary, R.C.M. 1947, section 91-4402.

The State asserts that the evidence in this case is not sufficient to overcome the rebuttable presumption of section 91-4402, and that it has not been shown to the contrary that the gift was not in contemplation of death.

Randolph Hall in Fed. Estate and Gift Taxation, section 601, page 242, says: "Where a gift in contemplation of death is charged by the commissioner the estate must usually prove by a preponderance of evidence that the gift in question was not in contemplation of death." The task of the taxpayer is harder where the gift is within the two-year period. At that time the federal law had a two-year rebuttable provision while the Montana law has a three-year rebuttable presumption. Generally the course pursued to overcome the above rebuttable presumption is to show that the gifts were made for purposes

associated with living. See In re Warren's Estate, 128 Mont. 395, 275 Pac. (2d) 843. In such a case the issue is generally one of fact.

In the instant case the respondents make two contentions, viz.: (1) That the gift here was made to correct the record representing that James Rice transferred this property interest simply to rectify a mistaken transfer theretofore made solely to himself; and (2) that in any event the gift here was not for an inadequate consideration since Rice's wife had contributed value, through her services in working on the ranch toward the obtaining of the property transferred. The contentions are inter-independent, and in fact one and the same, namely: That because Mrs. Rice had worked on her husband's farm all through her married life and had helped him acquire his estate that thereby she acquired an interest in his property and by so contributing value the transfer to her was solely for the purpose of recognizing her right and of giving her the legal title to the property interest.

This is the contention made in the case of In re Marsh's Estate, 125 Mont. 239, 234 Pac. (2d) 459, namely: that a married woman through her work and services performed for her husband obtains an interest in his property. In the Marsh case, supra, 125 Mont. at page 244, 234 Pac. (2d) at page 462 this court said: ''The common law rule that a wife owes a duty to her husband to attend to her household duties and to work for the advancement of her husband's interests was not changed by the Married Women's Act, R.C.M. 1947, section 36-116; Gates v. Powell, 77 Mont. 554, 252 Pac. 377. *Those services which a wife owes her husband do not create for her a joint interest in his estate.* The husband's obligation is to support his wife out of his property or by his labor, R.C.M. 1947, section 36-103, and neither has any interest in the property of the other. R.C.M. 1947, section 36-104; Emery v. Emery, supra, [122 Mont. 201, 200 Pac. (2d) 251]; Shaw v. Shaw, supra [122 Mont.] 593, 208 Pac. (2d) 514].'' Emphasis supplied.

Much testimony was presented to establish the fact that

Mr. and Mrs. Rice and their children frequently referred to the property as "our" farm. Such testimony shows nothing more than the family operation of a farm. It does not establish any legal title in or to the farm of James Rice.

This court in the case of In re Wadsworth's Estate, 92 Mont. 135, 145, 11 Pac. (2d) 788, 792, interpreted the phrase "in contemplation of death" and followed the case of United States v. Wells, 283 U.S. 102, 51 S. Ct. 446, 450, 75 L. Ed. 867, wherein it is said:

" 'The quality which brings the transfer within the statute is indicated by the context and manifest purpose. Transfers. in contemplation of death are included within the same category, for the purpose of taxation, with transfers intended to take effect at or after the death of the transferor. The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax. * * * As the transfer may otherwise have all the indicia of a valid *inter vivos*, the differentiating factor must be found in the transferor's motive. * * *'

" 'It is sufficient for present purposes that such gifts are motivated by the same considerations as lead to testamentary dispositions of property, and made as substitutes for such dispositions without awaiting death, when transfers by will or inheritance become effective. Underlying the present statute is the policy of taxing such gifts equally with testamentary dispositions, for which they may be substituted, and the prevention of the evasion of estate taxes by gifts made before, but in contemplation of death'. Milliken v. United States, 283 U. S. 15, 51 S. Ct. 324, 327, 75 L. Ed. 809."

In the Wadsworth case the court quoted with approval the case of State v. Pabst, 139 Wis. 561, 591, 121 N.W. 351, wherein it was said:

"The statute was not intended to restrict persons in their right to transfer property in all legitimate ways, but it clearly manifests the purpose to tax all transfers which are accomplished by will, the intestate laws, and those made prior to

death which can be classed as similar in nature and effect, because they accomplish a transfer of property under circumstances which impress on it the charactertistics of a devolution made at the time of the donor's death."

Following the above principles and in view of the fact that the gift made by James Rice was made at a time that he clearly contemplated making a will and setting his house in order and since there is no clear and convincing evidence to establish that the motive actuating the transfer by gift was dominantly a motive associated with life, the respondents failed to carry the burden imposed upon them to overcome the presumption of the statute, and upon such failure of proof the gift was one made in contemplation of death and therefore subject to tax. Accordingly I dissent to the majority opinion herein.