Otha J. SPRADLIN, on Behalf of Kevin O. Spradlin, Plaintiff,

v.

The UNITED STATES of America, and Anthony J. Celebrezze, Secretary of Department of Health, Education and Welfare, Defendants.

Civ. No. 2639.

United States District Court
D. Montana,
Great Falls Division.
Jan. 12, 1967.

Rapkoch & McKinney, Leonard H. McKinney, Lewistown, Mont., for plaintiff.

Moody Brickett, U. S. Atty., Robert T. O'Leary, Asst. U. S. Atty., Butte, Mont., for defendants.

## OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

Claimant seeks to review a decision of the Appeals Council affirming a decision of a Hearing Examiner denying social security benefits to Kevin Otha Spradlin (called Kevin) for a period prior to Sep-

tember, 1965 [1] on the ground that Kevin, being illegitimate, was not the child of the wage earner for social security purposes.

Kevin was the natural child of Vernon Spradlin (called Vernon) and Theresa Spradlin (called Theresa) born in Great Falls, Montana, July 8, 1958.

As the hearing officer found, Vernon and Theresa lived together as man and wife from September, 1957 to approximately September, 1960. Vernon died on October 30, 1960.[2] The record shows that during the whole period they held each other out as man and wife. Kevin's birth certificate, signed by Theresa, shows Theresa and Vernon to be the mother and father of Kevin, and the baptism records (September, 1958) show a Mr. and Mrs. Vernon William Spradlin to be the parents of Kevin. Both Vernon and Theresa attended this baptismal ceremony. Vernon acknowledged Kevin to be his son to his friends and relatives and supported Theresa and Kevin until his death. Kevin's middle name, Otha, is the name of Vernon's father.

The Appeals Council while properly holding that a consensual or common-law marriage is recognized in Montana[3], did not properly apply the presumptions created by Montana law.[4]

Once it appeared that Vernon and Theresa were deporting themselves as husband and wife, the law presumed that they had entered into a lawful contract of marriage.[5] This presumption was not vitiated by proof of the fact that both parties had been previously married, because it is presumed that a second marriage had been preceded by a lawful dissolution of the former marriage. "Every presumption will be indulged in favor of the legality of a common-law marriage in the same way and to the same extent as the law indulges them in favor of a ceremonial marriage." [6]

In Montana a presumption has the effect of evidence and is overcome as a matter of law only when in light of the proved facts reasonable men could no longer find in accordance with the presumed fact.[7]

It is quite clear that the Appeals Council did not properly evaluate the effect of presumptions in Montana. The opinion of the Appeals Council in this respect reads:

"In the absence of a ceremonial marriage, a valid relationship between the wage earner and Theresa may be established only by proof of a common-law marriage, a relationship which is recognized in Montana. The courts of Montana recognize a common-law or

1. An amendment to the Social Security Act, effective September 15, 1965, liberalizes the provisions of the act for illegitimate children. Public Law 89–97, July 30, 1965, 79 Stat. 286.

2. The hearing officer found: "The evidence establishes, particularly testimony elicited at the hearing from all witnesses present, that the deceased wage earner, Vernon W. Spradlin and his alleged wife Theresa, lived together as man and wife in Montana from September 1957, to approximately September, 1960, at which time they moved to Lander, Wyoming, where the wage earner died on October 30, 1960. It has also been shown that Kevin lived with and was supported by his father after his birth in July, 1958."

3. Section 48–101 R.C.M.1947, Welch v. All Persons, 78 Mont. 370, 254 P. 179

(1927), Miller v. Sutherland, 131 Mont. 175, 309 P.2d 322 (1957).

4. The secretary is required by Section 216(h) of the Act (42 U.S.C. § 416(h)) to apply the law which would be applied in the solution of the problems by the courts in Montana. Since the Montana courts are required to give effect to the presumptions, the secretary is likewise required to give effect to them.

5. Section 93–1301–7(30), R.C.M.1947, Stevens v. Woodmen of the World, 105 Mont. 121, 71 P.2d 898 (1937).

6. Welch v. All Persons, supra n. 3, at p. 384 of 78 Mont., p. 182 of 254 P.

7. State v. Rice, 134 Mont. 265, 329 P.2d 451 (1958), and see New York Life Insurance Co. v. Gamer, 9 Cir. 1939, 106 F.2d 375, cert. denied 308 U.S. 621, 60 S.Ct. 294, 84 L.Ed. 518.

consensual marriage where the parties are otherwise capable of marrying, mutually consent thereto, and mutual consent is followed by a public assumption of the marriage relation. The claimant cites the presumption of the Montana law which favor [sic] matrimony and presume that a man and woman deporting themselves as married have entered into a valid contract of marriage. Clearly, there is evidence here from friends and neighbors that the couple held themselves out as married and lived together as a family unit. Nonetheless, because of the unavailability of Theresa, *there is no evidence of the marital intent of the parties nor of present consent to be husband and wife. No mutual consent has been demonstrated.* Theresa herself did not allege a common-law relationship, but claimed a ceremonial marriage which could not be verified. Moreover, the evidence fails to *establish conclusively that either Theresa or the wage earner was competent to enter into a marriage contract.* Dissolution of the wage earner's marriage to Marilyn has not been proven, nor has it been shown that Theresa's prior unions had terminated. Accordingly, the Appeals Council must conclude, and does hereby find, that no valid common-law marriage existed between the wage earner and Theresa." (Emphasis supplied)

The underlined portions of the opinion are at variance with the Montana law. The presumption itself was proof of a marriage, ceremonial or common-law. If the hearing officer or the Appeals Council were to weigh on one side the presumption and on the other evidence to the effect that Theresa claimed the ceremonial marriage in places where no record of such could be found, it would be entitled to find as a fact that there was no ceremonial marriage. If there was no ceremonial marriage, the presumption

would be sufficient to establish both the capacity of the parties and the consent of the parties for the purposes of the common-law marriage. The statute creating the presumption,[8] by the use of the words "lawful contract" embraces both the fact of the consent and the capacity to consent. On the issue of capacity to marry the presumption of marriage should be weighed on the one side and on the other side should be weighed the fact that the court records in two counties in Nevada[9] do not show that Vernon secured a divorce from Marilyn and the fact that Marilyn herself seemed to have no knowledge of a divorce other than Vernon's statement that he had divorced her in Nevada. On such weighing the fact finder might conclude that the presumption had been overcome and that Vernon and Theresa were not free to contract a common-law marriage. Certainly, however, there is no requirement in the law that the capacity to marry should be conclusively established. The statutory presumption was itself sufficient to establish the marriage unless overcome by other evidence.

Defendant urges that claimant, by relying on the presumption created by Section 93–1301–7(30) to the effect that there was a marriage, and Section 93–1301–6(5) to the effect that a child born as issue of a wife cohabiting with her husband is indisputably presumed legitimate is piling presumption upon presumption and that this may not be done. The argument fails if for no other reason than that the second presumption is not needed. If Vernon and Theresa were in fact married there is ample evidence to show that Kevin was Vernon's child— if so, then he was legitimate.

■■ The cause is therefore remanded to the Secretary with instructions to treat the presumption of marriage as evidence and to weigh against the presumption the other facts to determine wheth-

---

8. Footnote supra.

9. The departmental files may indicate statements by Vernon that the divorce, if granted, was granted in either Washoe

or Churchill counties, but the file before the court does not indicate why the search was limited to those two counties.

er or not the presumption has been overcome.[10]

A claim of legitimacy was based upon the provisions of Section 61–136 R.C.M. 1947. The court agrees with the Appeals Council that this section was repealed by Chapter 240 of the Laws of Montana, 1957. Claim of heirship was likewise based upon Section 91–404, R.C.M.1947. It is the opinion of the court that the facts do not bring claimant within that section.

10. While a court is bound by the Secretary's findings where there is substantial evidence to support them, the court may act where the ultimate conclusion rests upon an improper interpretation of the law. Conley v. Ribicoff, 9 Cir. 1961, 294 F.2d 190; Flemming v. Lindgren, 9 Cir. 1960, 275 F.2d 596; McMullen v. Celebrezze, 9 Cir. 1964, 335 F.2d 811.